## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **FENNER INVESTMENTS, LTD.** | § | |
| | § | |
| **PLAINTIFF,** | § | **CIVIL ACTION NO.  6:08-CV-061** |
| | § | |
| **V.** | § | **JURY TRIAL** |
| | § | |
| **3COM CORPORATION, ET AL.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## PLAINTIFF FENNER INVESTMENTS, LTD'S REPLY BRIEF IN SUPPORT OF ITS CLAIM CONSTRUCTIONS FOR THE '224 AND '906 PATENTS

## I.    **INTRODUCTION**

The Fenner Patent family beginning with U.S. Patent No. 5,095,480 describes various inventive concepts dealing with packet-data networks and mobile communications in an Internet environment.  In an attempt to blur the distinctions between these two separate inventive concepts, Defendants take out of context prosecution statements expressly directed at mobile IP communications, and ignore the claim language and aspects of the inventions that are ***not*** tied to mobility.  The independent claims of the '224 Patent and the '906 Patent are ***not*** directed to mobile IP communication technology.   Indeed, the '224 Patent file history reveals the absence of a terminal disclaimer because its claims are not coextensive with any of the related patents, including the '480 and '670 Patents.[1]  Therefore, the independent claims of the '224 Patent cannot be *per se* restricted to the scope of the claims of its parent or other related patents.

The '906 Patent also is directed to inventive concepts not limited to mobile IP technology. It discloses that the IEEE standard is a known communication standard for communications in computer networks and describes MAC level addressing of that standard as well as stationary Internet communication standards.  ('906, 14:15-20.)[2]  These standards are not limited to mobile networks, which was the technology at issue in the claim construction order pertaining to the '670 Patent.  (Defs.' Ex. I.)  It is improper to limit the '906 and '224 Patents to embodiments and features exclusively directed to mobile IP technology.   Indeed, Claims 3, 8 and 12 of the '224 Patent are directed to source filtering, one of the many improvements over the prior art that the patents disclose, *i.e.,* a fast source-filtered Internet routing scheme.  ('224, 5:30-34.)  *See Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1340, 1355 (Fed. Cir. 2003) (stating that a claimed invention does not need to achieve all objectives of the embodiments described); *Honeywell, Inc.*

---

[1]      Also, the later-filed '670 Patent does not claim any dependence on the '224 Patent.
[2]      Citations to the patents-at-issue are to the short number of the patent (PAT), the column (COL), and the line numbers (LNS) as follows:  PAT, COL:LNS.

*v. Victor Co.*, 298 F.3d 1317, 1325-26 (Fed. Cir. 2002) (finding that claims may not be limited to cover structures that would solve all the prior art problems identified in the background section of the written description).

Defendants' proposed constructions are improper because:

- They attempt to import limitations of specific embodiments, and statements from the prosecution to narrow the meaning of the disputed terms in the asserted patent claims.

- They ignore and contradict the plain language of the claims and other dependent claims.

- They improperly attribute limitations to the claims contrary to Federal Circuit law related to construction of terms drafted in means-plus-function form.

Fenner's proposed constructions, in contrast, are consistent with the plain and ordinary meaning of the claims in the context of the specification.

## II.    **"LOGICAL ADDRESS" AND "ADDRESS"-RELATED TERMS ARE NOT LIMITED BY PROSECUTION STATEMENTS BECAUSE THOSE STATEMENTS DO NOT ADDRESS THE LANGUAGE OF THE '224 PATENT CLAIMS.**

Fenner disputes that the "logical address" terms should be construed to include a "fixed, unique, and unchanging" limitation and a "no internal structure to suggest network connection location" limitation.   To support their position that the constructions should be so limited, Defendants rely on a claim construction order from another case dealing with a different claim term from a different patent, and statements from the prosecution of various patents.  (Defs.' Ex. I.)  The "logical address" terms recited in Claim 3 of the '224 Patent (and the terms "source address" and "destination address" of Claims 8 and 12) are broadly claimed, without additional recitations of "fixed, unique and unchanging" notions or "internal structure" limitations.[3]  The claims in the '480 Patent recite the limitation "fixed, unique and unchanging code."  (Defs.' Ex. G

---

[3]       Dependent Claims 9 and 13 recite the "arithmetically coding" and "unique numerical value." Therefore, independent Claim 8 and dependent Claim 12 cannot be so limited.

(stating in page 24 that differences between prior art and *claimed* invention were present according to Claim 1 appearing in page 2 of the exhibit and reciting "a first unique, fixed and unchanging code).) The '670 Patent claims recite the term "IP address." Those terms are different than the broader "logical address" of the '224 Patent, and for good reason. The claims in which those terms appear deal with mobile IP networks, yet the independent claims of the '224 Patent are not directed to mobile IP networks. The '224 Patent terms should not be saddled with limitations from a prior case or related patents when the claims recite different terms and are directed to different inventive concepts – source address filtering and routing based on the filtering. *See ResQNet.com, Inc. v. Lansa, Inc*., 346 F.3d 1374, 1383 (Fed. Cir. 2003) (finding that the prosecution history of a parent was irrelevant to the meaning of the limitation at issue because the two patents did not share the same claim language).

In fact, the prosecution of the '224 Patent supports Fenner's proposed construction. The Applicant during prosecution of the '224 Patent did not refer to the logical address as being fixed, unchanging or unique. In fact, the Applicant stated that the prior art did not show filtering packets based on the logical address. (Defs.' Ex. E 12.) The prosecution statements also confirm Fenner's contention that the claims of the '224 Patent are not limited to mobile networks. The Applicant explained that source filtering "may take place **in the Internet environment _or_ with mobile users**." (Id.) Statements that describe an invention generally, and the statements in the '224 Patent file history, are not statements that disavow claim scope. *See Northern Telecom Ltd. v. Samsung Elec. Co. Ltd*., 215 F.3d 1281, 1294-95 (Fed. Cir. 2000) (declining to narrow the claims because during prosecution of the patent, the patentee's statement that the prior art was "totally different" and statements concerning features of the claimed plasma etching did not show that ion bombardment was deliberately, unmistakably and unambiguously disavowed).

**A.**     *The '224 Patent Claims Should Not be Saddled With Limitations Directed To Embodiments That Offer Mobile IP Solutions.*

The '224 Patent file history confirms that the scope of the claims should not be limited to mobile IP solutions.  Indeed, the specification describes MACs that connect similar or dissimilar physical shared media networks.  ('224, 12:30-33.)  As such, the claimed invention is limited only by what it recites and not by extraneous limitations of addresses being fixed, unique or unchanging, which are applicable only to mobile IP networks.  Thus, the broad term "logical address" should not be saddled with limitations not necessary to practice the ***claimed*** invention.

Additionally, Defendants' inclusion of "internal structure" limitations in the proposed construction is inappropriate.  The '224 Patent refers to routing without "predetermined" structures – not without "any" internal structure.  The file history dispels Defendants' contention that a complete lack of internal structure is required – not a word of a lack of structure is mentioned.  (Defs.' Ex. E 12.)  The appeal brief in the prosecution of the '224 Patent reproduces the same language as the prosecution statements.  (Defs.' Ex. F 7-8).  Furthermore, the claim limitation specifies that the sender of a packet is identified per the logical address, not the physical address.[4]

To put it in context, the example below illustrates the distinctions of a logical address that is used to make decisions on whether to forward a packet without regard to the physical address of the sending device.  Sending a search request to the website for the District Court of the Eastern District of Texas, will cause the computer to send packets to "207.41.16.103," the IP address.  This address is logical as it was assigned by the computer network.  This address, however, is not the actual address of the Court or the physical address of the computer port sending or receiving packets in the network.  The actual computer responding to this address is in Washington D.C. Communicating with that computer is accomplished by using a string of numbers without the need

---

[4]     Claim 3 recites "a first logical address for identifying a sender of the data packet ***independent of*** the sender's physical address."  (Emphasis added.)

to know the address of the location where the network and its routers are located. Also, the physical address of the computer port that receives the communications is not needed. This is not to say that a logical address has no "internal structure." All the '224 Patent describes is that communication with a computer is not dependent on the location of that computer, such as by using a ***predetermined*** code for where that computer is located. The communication is accomplished through the logical address that is assigned by the computer system – in the example above, 207.41.16.103 as assigned to the Court's website domain name by a domain name server in the Internet.

> **B.**    *Fenner's Proposed Constructions of "Logical Address" and "MAC Address" Distinguish Between Physical and Logical Addresses – Defendants' Proposed Constructions Confuse the Two.*

Fenner's constructions distinguish between a logical address and a physical address. Physical addresses are not "assigned" by or within a computer network. Physical addresses, such as a MAC address, are assigned by the hardware manufacturer. These are hard-coded in the equipment and cannot be easily manipulated. ('224, 8:24-26; *see also* '224, 10:54-55 ("Physical addresses are associated with interface hardware.").) Therefore, Fenner's proposed construction of "logical address" – an address assigned within a computer network – does not encompass a physical address.

The term "MAC address" is recited in the claims of the '906 Patent, not the '224 Patent. Defendants' proposed construction assumes that the MAC address is a logical address, but it is not. The '906 Patent claims recite that each IEEE 802 media access controller (MAC) communications port has a MAC address. It is known in the art that a port is the hardware of a communication interface and that such a device has an address that is considered a physical address. (*See* Pl.'s Ex. C (defining "MAC address" as standardized data link layer address that is required for every port or device that connects to a LAN. . . . Also known as hardware address, MAC layer address, and

*physical address*").)  Additionally, the '906 Patent describes the MAC address field "120" in the packet header as a physical layer.  ('906, 16:40-43, 50, 56.)  The fact that such an address could be inserted in an address field of a packet does not change the fact that the address is a physical address.

To support their proposed construction, Defendants take the claims and the specification out of context.  The '906 Patent describes an embodiment in which the IP protocol is used to provide a connectionless service between nodes on a network.  ('906, 17:3-7.)  In one embodiment, data is sent from one node to another encapsulated in an Internet datagram with an IP header specifying the unique global network addresses of the destination and the source node.  *Id.*  An additional address field is the MAC address.  (Fig. 4, item 120.)  The '906 Patent describes another embodiment in which the IEEE standard physical layer (MAC level) address is used as an address scheme.  ('906, 14:15-18.)  This MAC address type of address is different from an IP type of address.  ('906, 14:18-22.)  Therefore, the '906 Patent describes at least two different embodiments concerning the types of addresses – one of a physical address, such as a MAC address, and the other of a logical address, such as an IP address.  Both are capable of being included as part of the header of a packet.  Construing "MAC address" as Defendants propose would not only contradict the specification's express teaching of a MAC address being a physical address, but would also eliminate from the claim scope embodiments of a message format that include a physical address.

## III.   FENNER'S PROPOSED CONSTRUCTIONS FOR THE "PHYSICAL MEDIA" TERMS ARE CONSISTENT WITH THE CLAIM LANGUAGE AND THE INTRINSIC.

Defendants' proposed constructions of "physical media" and "physical media address" are inconsistent with the claim language.  First, there is a fundamental disagreement concerning whether a "physical media address" is limited to a "destination address."  Fenner contends it is not.  Claim 8 recites that the data packet includes "a physical media address for identifying a physical

device for routing the packet in physical media."  This claim language does not state that an identified physical device is the device to which the physical media address belongs.  This claim language also does not state that an identified physical device is the device for which the data packet is intended.  Defendants' proposed construction conflates these two extraneous limitations, thus improperly adding limitations not called for by the plain and ordinary meaning of the claim language.  Fenner's proposed construction, in contrast, describes *what* is the "physical media address"– an address associated with the hardware of the physical media.[5]  Fenner's proposed construction also is consistent with embodiments in which the physical media address can be either the source address or the destination address.  (Defs.' Ex. F at 7 (stating that the physical address of the *source* is part of the packet as it arrives a node.).)

Second, the parties dispute whether the term "physical media" is directed to a level of communication or to actual physical interconnections.  Fenner contends it is directed to the former and the evidence Defendants offer in support of the latter actually support Fenner's position.  Claim 8 recites that the data packet is routed "in physical media."  The specification, in a particularly elucidating passage, states the following:  "[t]hus many communication networks service their stationary and mobile users with a wide variety of *media* ranging from satellite links, high frequency radio, local area networks (LANS) and dedicated point to point circuits as illustrated in FIG. 1."  ('224, 10:40-44) (emphasis added.)  According to this passage, the "physical media" corresponds to the hardware technologies making up the network, whether stationary or mobile users are involved.[6]  Neither the specification nor the claims use the term

---

[5]    Defendants argue that the inclusion of the term "hardware" in Fenner's proposed construction creates a conflict with other terms.  Fenner is willing to remove the term "hardware" from its proposed construction of the term "physical media address." The result is the following construction:  address associated with the physical media.
[6]    Another passage describes "shared media networks" as incorporating Ethernet, Token Ring, Token Bus, FDDI, etc.  ('224, 7:59-67.)

"interconnections" to refer to the physical media. In fact, the specification refers to the "media" as something broader than interconnections, when stating that coverage of networks should be limited by the restrictions of the "media itself" and not to the length of wires and cables. ('224, 7:67-8:6.) Therefore, Defendants' proposed construction unduly restricts the scope of "physical media" to physical interconnections.[7]

Defendants admit that one of the ISO layers described in the specification is a physical layer. (Defs.' Resp. at 19.) The specification refers to a "Media" Access Controller (MAC) as communicating in the physical layer. ('224, 13:28-31.) Fenner's proposed construction is, therefore, consistent with the specification and the claim language.

## IV.    "ASSOCIATED WITH" HAS A PLAIN AND ORDINARY MEANING AND DOES NOT INVITE A CONSTRUCTION USING TERMS FOUND ONLY IN PREFERRED EMBODIMENTS.

Defendants urge that this Court set aside the plain and ordinary meaning of the term "associated with" in favor of a limited construction that includes arithmetic compression and production of a unique value. Defendants, however, have not overcome the presumption that words have their plain and ordinary meaning. The Court must presume that the terms in the claim mean what they say, unless otherwise compelled, and must give full effect to the plain and ordinary meaning of the claim term. *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 989-90 (Fed. Cir. 1999). Admitting that the phrase "associated with" has a plain and ordinary meaning, Defendants then argue that the specifications and prosecution history command that the term "associated with" must be construed to have a special meaning. The specification of the '224 Patent, however, uses the term "associated with" according to its ordinary meaning and in phrases wholly unrelated to "unique values created by arithmetically compressing."

---

[7]    Defendants also err by limiting "physical media" to transfer of packets to and from the node. In one embodiment, a MAC is not limited to transferring packets to and from a node. A packet may be received and transmitted by a host or user. (*See* Fig. 2 and '224,12:66 (identifying host 40 as MAC).)

- Describing the prior art, the specification states that "[p]hysical addresses are *associated with* interface hardware." ('224, 10:54-55.)

- In describing one embodiment, the specification states that as aircraft 10 moves to a different network, the new node "stores the source address of the new node in the route record 86 *associated with* the unique source address for aircraft 10." ('224, 14:15-19.)

- In describing other embodiments, a key record memory is presented with a key record memory address "in order to access the record *associated with* that key." ('224, 24:2-5.) And, "[u]pon presentation to the record memory, the record memory address enables access of a record *associated with* the key. . . ." ('224, 24:15-18.)

- In another embodiment, "[e]ach table has three additional columns for storing values *associated with* Save[i] and Change[i]." ('224, 29:27-28.)[8]

Indeed, the ordinary use of the term "associated with" in the specification as shown above reinforces Fenner's contention that the term has a plain and ordinary meaning. (*See also* '224, 11:30-34 (stating that each node stores "data *representing* the address of the last node communicating with a particular mobile vehicle," which is an "association" that is broader than "arithmetic coding").) Fenner's position that the term has a plain and ordinary meaning also is consistent with how that term is used in non-asserted claims. For example, Claim 9 recites that the "means for looking up includes an encoder for *arithmetically coding the source address to a unique numerical value* for indicating a location in the directory table of the source filtering information *associated with* the source address." The plain and ordinary meaning of the term "associated with" or "associating" is consistent with the fact that "arithmetic coding" and "unique numerical values" are limitations specifically claimed in a dependent claim that does not equate "associated with" to those limitations.

Defendants' reliance on the file history also is misplaced as Defendants' alleged support does not relate to the claim or the term at issue. Instead, the statements taken from Applicant's

---

[8]     There are more than fifteen instances of the term "associated with" in the specification, not one equating that term with referencing a "unique value created by arithmetically compressing, as distinct from hashing."

Brief in Support of Appeal are directed to prosecution of Claim 33 which recites "arithmetically coding, according to a predetermined model, the source address as a numerical value uniquely identifying a record of data containing source filtering information for the source address."[9] Defendants are incorrect in arguing that Fenner repudiated other association techniques during prosecution of the '224 Patent.

## V.    FENNER'S PROPOSED STRUCTURES ASSOCIATED WITH THE MEANS-PLUS-FUNCTION TERMS ARE CLEARLY LINKED THROUGH THE DESCRIPTION OF THE EMBODIMENT OF FIGURE 2.[10]

Defendants' proposed constructions for the means-plus-function terms in dispute include structures that are not necessary to perform the functions recited in the claims.  It is well known, and this Court follows the principle that, "a court may not import into the claim features that are unnecessary to perform the claimed function."  *Mass Eng'd Des., Inc. v. Ergotron, Inc.*, Docket No. 345, 206 CV 272 (E.D. Tex., Marshall Division, Aug. 7, 2008) (citations omitted).  Fenner has provided the appropriate structures that are clearly linked to the functions and that are ***necessary*** to perform those functions.  (Pl.'s Br. 17-22.)  For example, Defendants include many structures dealing with arithmetic compression and key memory embodiments that are not necessary to perform the ***claimed*** functions.  (Defs.' Resp. 21-22, 26-29.)  Defendants do not show how any of the structures they identify are either linked or necessary.  As such, Defendants' over inclusion of limitations should be rejected.

## VI.    CONCLUSION

For the aforementioned reasons, Fenner respectfully requests that the Court reject Defendants' proposed claim constructions and that it adopt Fenner's proposed claim constructions.

---

[9]    Defs.' Ex. F at 12.
[10]    After Defendants modification of their proposed structure for the means-plus-function term "means for receiving a data packet," the parties do not appear to dispute that the structure is a Media Access Controller (MAC).

Respectfully submitted this 2nd day of February 2009,

*/s/ Brett C. Govett*_____
Brett C. Govett
Texas Bar No. 08235900

Robert M. Chiaviello, Jr.
Texas Bar No. 04190720

FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
Email: bobc@fulbright.com
Email: bgovett@fulbright.com

**COUNSEL FOR PLAINTIFF
FENNER INVESTMENTS, LTD.**

| OF COUNSEL | |
|---|---|
| Otis W. Carroll | T. John Ward, Jr. |
| Texas Bar No. 03895700 | Texas Bar No. 00794818 |
| IRELAND, CARROLL & KELLEY, P.C. | LAW OFFICE OF T. JOHN WARD, JR., P.C. |
| 6101 South Broadway | 109 W. Tyler |
| P.O. Box 7879 | P.O. Box 1231 |
| Tyler, Texas 75711-7879 | Longview, Texas 75606-1231 |
| Telephone: (903) 561-1600 | Telephone: (903) 757-6400 |
| Facsimile: (903) 581-1071 | Facsimile: (903) 757-2323 |
| Email: otiscarroll@icklaw.com | Email: jw@jwfirm.com |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served in compliance with Local Rule CV-5(a) on February 2nd, 2009.

  */s/ Brett C. Govett*                            
Brett C. Govett