IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| FENNER INVESTMENTS, LTD. | § | |
|---|---|---|
| | § | |
| PLAINTIFF, | § | CIVIL ACTION NO. 6:08-CV-061 |
| | § | |
| V. | § | JURY TRIAL |
| | § | |
| 3COM CORPORATION, ET AL., | § | |
| | § | |
| DEFENDANTS. | § | |

**PLAINTIFF FENNER INVESTMENTS, LTD.'S RESPONSE TO DEFENDANTS'
<u>REVISED RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

I.   **INTRODUCTION**

Notwithstanding the parties' agreement on the term "physical media" and Defendants' revisions, the parties continue to dispute the constructions for the term "physical media address" and the "physical media address" clause for two reasons. First, the proposed revisions to the "physical media address" term and the clause reciting that term narrowly and improperly limit the claims. Those narrow limitations are at odds with broader descriptions of the physical media address and its role in the invention. Second, Defendants' revisions to the structures corresponding to the means-plus-function terms do not remedy the problems that Fenner's briefing addressed. The Defendants' newly identified and remaining structures do not perform the recited functions. Consequently, Fenner requests that the Court adopt Fenner's proposed constructions for the terms "physical media address" and the related clause. For the means-plus-function terms, Fenner requests that the Court adopt Fenner's proposed structures as these perform the functions recited in the claims and do not burden the claims with unnecessary limitations.

In response to Defendants' revised claim constructions, Fenner also proposes an alternative construction for the term "logical address." Fenner proposes that if the Court finds its original proposed construction is too broad in light of the intrinsic record, an alternative construction for the term "logical address" is "a fixed and unique identifier of a connection to the Internet represented by a series of numbers that is processed without regard for the physical location of the connection." Fenner contends that, while its original proposed construction is accurate and supported by the intrinsic record, the proposed construction would simplify the claim construction issues for the Court to decide. One of the issues is whether the identifier is "unchanging." Fenner contends that it is not so limited. The second issue is whether Defendants' position that the identifier "has no internal structure to suggest network connection

location" is too narrow and inaccurate. Fenner contends that its proposed alternative construction cures the inaccuracy and finds support in the intrinsic record Defendants cite in support of their own proposed construction. Therefore, if the Court were inclined to adopt a construction of the term "logical address" that is more limited than what Fenner has proposed in its earlier briefing, Fenner requests that the Court adopt the following construction: "a fixed and unique identifier of a connection to the Internet represented by a series of numbers that is processed without regard for the physical location of the connection."

## II.   ARGUMENTS

### A. Fenner Proposes An Alternative Construction For The Term "Logical Address."[1]

While Fenner has proposed a correct construction for "logical address," Fenner provides an alternative construction in the event the Court wishes to adopt a more narrow construction. If adopted, there will remain only two issues for the Court to decide regarding the construction of "logical address."[2] The two issues concern the underlined portions found below in the respective proposed constructions.

| Fenner's Original Proposed Construction | Fenner's Alternative Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| An address assigned within a computer network; examples include IP addresses | A fixed and unique identifier of a connection to the internet represented by a series of numbers <u>that is processed without regard for the physical location of the connection</u> | A fixed, unique, and <u>unchanging</u> identifier of a connection to the internet represented by a series of numbers <u>that has no internal structure to suggest network connection location</u> |

---

[1]   This alternative proposed construction is limited to the term "logical address." Fenner maintains its proposed claim constructions for the other address terms: source address, destination address and MAC address.

[2]   While it is the district court's duty to resolve the parties' disputes regarding the scope of a claim term, this does not require the court to construe every limitation present in the claim. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

>    *1.     It is improper to include "unchanging" in the construction of "logical address"*

Fenner contends that requiring the identifier to be "unchanging" unduly limits the claim and injects redundancy in the construction for the term "logical address." Fenner's proposed construction – in contrast with Defendants' – omits the modifier. The reason is simple. The specification does not support such narrow a reading of a "logical address."

Defendants offer one sentence in the specification in support for inclusion of the word "unchanging" in their construction. This sentence – appearing in the background of the invention – states that an identification code assigned to hosts is "fixed, unique and unchanging." ('224, 2:39.)[3] Defendants offer no descriptions of embodiments or other support that explain why the claims have a scope limited to an "unchanging" identifier. Reliance on a construction of a different term from a prior case and the prosecution history of other patents addressing different claim terms does not prove that "unchanging" is a proper limitation. The "unchanging" portion of Defendants' construction is improper.

In fact, a closer inspection reveals that the specification refers to the "identification code" as "fixed" and "unique" while omitting the word "unchanging." (*See* '224, 6:25-26 (stating that the transceiver device has a first *fixed unique* identification code wherever the transceiver device may be located" – no mention of "unchanging"); '224, 8:35-38 (stating that the invention overcomes the disadvantages of the prior art by "allowing each host to have a *fixed unique* identification code *instead of* an address code which changes to identify itself with whatever communication network it may [be] operating")). The specification clarifies, and Fenner contends, that by being *fixed,* inclusion of the modifier "unchanging" is redundant and unnecessary as a part of the construction of the "logical address."

---

[3]     The format of the citation to U.S. Patent No. 2,842,224 is as follows (Patent number, column number(s):line number(s)).

> 2.  *Fenner's alternative proposed construction more accurately and clearly describes that the "logical address" is device independent*

Fenner contends that the term "logical address" means "a fixed and unique identifier of a connection to the internet represented by a series of numbers that is processed without regard for the physical location of the connection."  This proposed construction accurately describes how the invention treats the "logical address" in relation to the physical location of the device that receives data packets in the network.  For example, Claim 3 recites that the first logical address is "for identifying a sender of the data packet *independent of* the sender's physical address."  The specification also states that the "physical address structure is removed from the design and operation of the Internet routing *by treating* the message addresses as a symbol string without predetermined internal structure and *processing them as if* they are a unique identification code representing the host." ('224, 11:4-9.)  That is, the "logical address" is treated *independently* of a physical address or physical location and *is processed as if* it were unique.

More particularly, the specification describes that a sender and receiver of data packets communicate "without knowing the specific network location of the other." ('224, 11:37-39.)  This is consistent with the prosecution history statement that the "the receiver's unique and fixed code provides no information as to the physical location of the receiver of the source." (Defs.' Ex. G, at 25.)  The *knowledge* of the physical location is not needed for eventual handling of the data packets.

In contrast, Defendants contend that the series of numbers "has no internal structure to suggest network connection location."  However, the specification passages cited by Defendants in support of their proposed construction clarify that the presence or absence of a predetermined internal structure indicating physical location is irrelevant.  Notably, the specification states that there is *no reliance* on "any *known structure of the address field* other than knowing that it is a

- 5 -

sequence containing a known number of symbols." ('224, 16:48-50.) Neither these passages nor the claims state that the identifier *does not have* internal structure to suggest network location. All that the claims imply, and the specification describes, is that any internal structure, if present, *is not used* to determine whether to route the packet.

The claims, the specification and the prosecution history support Fenner's alternative proposed construction. Therefore, if the Court were inclined to adopt a construction for "logical address" that takes into account the irrelevancy of the physical network location, Fenner contends that its proposed construction should be adopted.

### B. The Remaining Issues Concerning The Physical Address Terms Must Be Decided In Favor Of Fenner's Proposed Constructions

*1. While the parties agree on a construction for the term "physical media," the parties continue to dispute the construction of the term " physical media address"*

Defendants' sole argument for why their revised proposed construction of "physical media address" is proper rests on: (1) avoiding the phrase "associated with,"[4] and (2) contending the phrase is vague and improper in light of other disputed claim terms. Fenner contends that Defendants' proposed construction does not alleviate the problem that Defendants raise and instead impermissibly narrows the claims.

Absent a special meaning, the phrase "associated with" retains a plain meaning, and there is no special meaning ascribed to the phrase. Fenner has shown in its Reply[5] that since the intrinsic evidence does not afford a special meaning to "associated with," this phrase has a plain and ordinary meaning and is not vague. *See Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1291 (Fed. Cir. 2008).

---

[4] Fenner's proposed construction for the term "physical media address" is "address associated with the hardware of the physical media."
[5] Pl.s' Reply at 8-9.

Instead, the phrase "associated with" is a layman's term and is used, in that manner, consistently throughout the specification. For example, the specification states that the "[p]hysical addresses are associated with interface hardware." ('224, 10:54-55.) As this passage shows, the relationship between the address and the hardware is clearly and explicitly described as ***an association***. Defendants do not provide any support for a direct relationship – that the address is *of* the hardware. Fenner's proposed construction is supported by the specification while Defendants is not.

Accordingly, Fenner requests that the Court construe "physical media address" as "address associated with the hardware of the physical media."

### 2. *Defendants propose a revised construction for the" physical media address" phrase that ignores broad descriptions of embodiments of the invention*

The "physical media address" phrase at issue here (and recited in Claim 8) is "a physical media address for identifying ***a physical device for routing the data packet*** in physical media." Notably, the phrase states "for routing," and it does so for a simple reason. The data packet, when filtered, may not be routed. That is, if a node receiving the data packet is protected from receiving data packets from an incoming source, the data packet is not routed. ('224, 13:1-5.) The plain and ordinary meaning of the phrase "for routing the data packet" leaves open the action of routing. It ascribes to the physical device the role of ***being capable of routing*** the data packet in the physical media. However, this routing action must be conditional on the event of filtering, to which the claims are directed. Fenner's proposed construction accounts for this condition. Contending the phrase retains its plain and ordinary meaning, Fenner's proposed construction also prevents the "physical device" from being unduly limited to unconditional routing or transmission of packets.

In contrast, Defendants' proposed revised construction states that a physical device "routes the data packet." (Defs.' Rev. Br. at 17-18.) But this revised construction ignores the simple fact that the data packet will not always be routed. Therefore, Fenner requests that the Court adopt Fenner's proposed construction of the physical media address phrase in its entirety.

### C. Defendants' Revisions To The Means-Plus-Function Terms Continue To Fail To Identify The Structures That Are "Necessary" To Perform The Recited Functions

Defendants admit that Claim 8 only refers to one component in each of Figures 2 and 3. (Defs. Br. at 18.) That component is, Defendants admit, MAC switch 38. *Id.* Inconsistent with this admission, Defendants identify dozens of structures outside of Figures 2 and 3 as "alternative" embodiments. Moreover, Defendants fail to show how those embodiments perform the address filtering that is at the heart of Claims 8 and 12. Fenner agrees that the MAC 38 particularly described with reference to Figure 2 is a structure that embodies the invention claimed in Claims 8 and 12. Therefore, each section below addresses Fenner's agreement and Defendants' admission in connection with each of the disputed means-plus-function terms.

#### 1. The "means for receiving a data packet" is a Media Access Controller

Defendants do not dispute that the corresponding structure of the "means for receiving" is, at least, a Media Access Controller (switch) 38. In revising their constructions, Defendants withdraw as corresponding structures all Media Access Controllers (MACs) shown in Figure 2 and also argue that Claim 8 refers to only one component in each of Figures 2 and 3 – MAC 38. (Defs. Br. at 18.) It is inconsistent for Defendants to also identify structures illustrated in Figure 5, which is directed to associative memory, and various buffers that do not receive data packets. Fenner agrees that a MAC, such as MAC 38 of Figure 2, is the only structure that necessarily performs the function of receiving data packets. ('224, 13:1-6.) As such, a MAC is the only appropriate corresponding structure for the "means for receiving a data packet."

Defendants' revisions incorrectly point to *internal structures* of the MAC 38 as the corresponding structure of the "means for receiving," inappropriately limiting the construction of the term. These internal structures of MAC 38, Defendants now contend, include buffers that allegedly receive data packets. This is wrong, however, because the buffers, if they receive anything at all, only handle portions of the data packet, such as the address information. By way of example, the source address shift buffer 48 and destination address shift buffer 50 are each 6 octets long because that is the length of the address field. ('224, 13:42-46.) That is, the buffers Defendants point to as structures for receiving data packets, do not receive data packets. At best, they receive only a portion of them. Accordingly, Defendants err in identifying buffer structures that are only tangentially involved, if at all, in receiving packets. Only those structures that are necessary to perform the function are to be deemed structures of a means-plus-function element. *NOMOS Corp. v. Brainlab USA, Inc. et al.*, 357 F.3d 1364, 1368 (Fed. Cir. 2004).

Fenner contends that the structure that receives a data packet is a MAC, and this is the structure corresponding to the "means for receiving a data packet."

> 2. *Defendants' revisions to the "means for looking up" term do not address the fact that the majority of the identified structures are not necessary to perform the recited function*

Defendants do not dispute that the structures corresponding to the "means for looking up" of Claim 8 include the source index 74 and the source protect table 78. Defendants, however, additionally identify dozens of other structures that do not necessarily perform the function of "looking up in a directory table stored at the controller using the source address source filtering information associated with the source address." The various additional tables and indexes Defendants propose as corresponding structures of the "means for looking up" pertain to other claim limitations not present in Claim 8. For example, Defendants point to learned address logic and logic circuitry that are involved in arithmetic coding of an address. This is beyond the scope

of Claim 8, particularly because these are features claimed in dependent Claims 9 and 10. Differences among the claim terms can assist the Court in understanding a term's meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2005) (en banc). For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. Accordingly, structures that perform the features of encoding, memories for storing index values, and adders for summing addresses as claimed in Claims 9 and 10 are not part of the broader Claim 8. Because Defendants include structures that are not necessary to perform the recited function of Claim 8, the defense proposed construction should be rejected.

Concerning Claim 12, Defendants do not dispute that the structures corresponding to the "means for looking up" include the routing index 76 and routing table 84. The dozens of other structures Defendants point to also capture devices that are not necessary to perform the recited function of "looking up, using the destination address, in a routing table information associated with the destination address for routing the data packet for delivery to the receiver." In particular, Defendants point to structures that are admittedly involved in the encoding of destination addresses and the arithmetic coding of those addresses. However, those are structures that correspond to other claim limitations, namely to dependent Claim 13. Differences among the claim terms can assist the Court in understanding a term's meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2005) (en banc). For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. Except for the routing index 76 and routing table 84, the other structures Defendants identify perform additional functions pertaining to the arithmetic coding

embodiments, and it is improper to include these as structures corresponding to the broader Claim 12.

> 3. *Defendants' revision of the structures allegedly corresponding to the "means for filtering" term does not solve the fact that Claim 8 is directed solely to Figures 2 and 3.*

The recited function of the "means for filtering" is "filtering the data packet in response to the source filtering information." Figures 2 and 3 are the only embodiments that illustrate and describe the buffered routing logic, which Defendants agree is included in the means for filtering. Defendants also admit that Figures 2 and 3 show the only component implicated by Claim 8. (Defs.' Rev. Br. at 18.) Therefore, Defendants inconsistently contend that various structures in Figures 4 and 5 correspond to the function of filtering data packets. Indeed, the written description does not describe any of those identified structures of Figures 4 and 5 as filtering data packets. For example, the MultiCast Record List 134 is described as having "information defining the shortest path from a particular source to that node." ('224, 14: 27-29.) MultiCast Record List 134 does not filter data packets and does not include source filtering information. Thus, it cannot be the "means for filtering." In summary, the structures Defendants identify as corresponding to the "means for filtering" are inconsistent with their own interpretation of the claims and the teachings of the specification.

## III.  CONCLUSION

For the above stated reasons, Fenner respectfully requests that the Court adopt its proposed constructions of the claims of the patents-in-suit.

*/s/ Robert M. Chiaviello, Jr.*
Robert M. Chiaviello, Jr.
Texas Bar No. 04190720
**Lead Attorney**
Brett C. Govett
Texas Bar No. 08235900

FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-2784
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200
Email: bobc@fulbright.com
Email: bgovett@fulbright.com

COUNSEL FOR PLAINTIFF
FENNER INVESTMENTS, LTD.

| OF COUNSEL<br><br>Otis W. Carroll<br>Texas Bar No.  03895700<br>IRELAND, CARROLL & KELLEY, P.C.<br>6101 South Broadway<br>P.O. Box 7879<br>Tyler, Texas 75711-7879<br>Telephone:  (903) 561-1600<br>Facsimile:  (903) 581-1071<br>Email: otiscarroll@icklaw.com | T. John Ward, Jr.<br>Texas Bar No. 00794818<br>LAW OFFICE OF T. JOHN WARD, JR., P.C.<br>109 W. Tyler<br>P.O. Box 1231<br>Longview, Texas 75606-1231<br>Telephone: (903) 757-6400<br>Facsimile: (903) 757-2323<br>Email: jw@jwfirm.com |
|---|---|

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served in compliance with the Federal Rules of Civil Procedure to all counsel of record on the 20th day of April, 2009.

*/s/ Robert M. Chiaviello, Jr.*
Robert M. Chiaviello, Jr.