1              UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF TEXAS
2                   TYLER DIVISION

3

FENNER INVESTMENTS, LTD.     :
4         Plaintiff,          :
                              :  C.A. NO.
5    VS.                      :  6:08-CV-00061 (LED)
                              :
6                             :
                              :  TYLER, TEXAS
7                             :  APRIL 23, 2009
3COM CORPORATION, FOUNDRY     :  9:00 A.M.
8    NETWORKS, INC., EXTREME  :
NETWORKS, INC., NETGEAR,      :
9    INC.,  ZYXEL COMMUNICATIONS,:
INC., D-LINK SYSTEMS, INC., :
10   AND SMC NETWORKS, INC.      :
         Defendants.          :

11

12           TRANSCRIPT OF MARKMAN HEARING
        BEFORE THE HONORABLE JOHN D. LOVE,
13          UNITED STATES MAGISTRATE JUDGE

14   APPEARANCES:

15

FOR THE PLAINTIFF:       MR. BRETT C. GOVETT
16                       MS. KIRBY B. DRAKE
                         MR. ROBERT M. CHIAVIELLO, JR.
17                       MS. MIRIAM L. QUINN
                         FULBRIGHT & JAWORSKI, LLP
18                       2200 ROSS AVENUE, SUITE 2800
                         DALLAS, TEXAS   75201-2784
19                       (214) 855-8000

20

FOR THE DEFENDANT:       MR. HERBERT A. "TREY" YARBROUGH
21                       ATTORNEY AT LAW
                         100 EAST FERGUSON
22                       SUITE 1015
                         TYLER, TEXAS   75702
23                       (903) 595-3111

24

25

```
 1                              MR. E. ROBERT YOCHES
                                FINNEGAN, HENDERSON, FARABOW
 2                              GARRETT & DUNNER, LLP
                                901 NEW YORK AVENUE, NW
 3                              WASHINGTON, DC  20001-4413
                                (202) 408-4000
 4

 5                              MR. CHRISTOPHER S. SCHULTZ
                                FINNEGAN, HENDERSON, FARABOW
 6                              GARRETT & DUNNER, LLP
                                55 CAMBRIDGE PARKWAY
 7                              CAMBRIDGE, MA  02142-1215
                                (617) 452-1600
 8

 9                              MR. JEFFREY T. LINDGREN
                                VASQUEZ BENISEK & LINDGREN, LLP
10                              3685 MT. DIABLO BLVD.
                                SUITE 300
11                              LAFAYETTE, CA  94549
                                (925) 627-4250
12

13                              MR. WILLIAM J. CORNELIUS, JR.
                                WILSON, ROBERTSON & CORNELIUS
14                              P.O. BOX 7339
                                TYLER, TEXAS  75711-7339
15                              (903) 509-5000

16

17

18   COURT REPORTER:           MS. KIMBERLY JULIAN
                                CURRY JOHNSON JULIAN, INC.
19                              CERTIFIED SHORTHAND REPORTER
                                P.O. BOX 270
20                              TYLER, TEXAS  75710

21

22   PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY,
     TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

23

24

25
```

```
 1                  THE COURT:  Ms. Morris, call the case.      00:02:50

 2                  COURTROOM DEPUTY:  The Court calls Case      00:02:53

 3   Number 6:08-CV-61, Fenner Investments versus 3Com

 4   Corporation, et al.

 5                  THE COURT:  Announcements.                   00:03:01

 6                  MR. GOVETT:  Good morning, Your Honor.       00:03:03

 7   Brett Govett, Bob Chiaviello, Kirby Drake and Miriam

 8   Quinn are with us here from Fulbright.  Mr. and Mrs.

 9   Fenner are here on the front row.  Deborah Race and

10   Johnny Ward and Dr. Jim Olivia is here as well.

11           We're ready to proceed, Your Honor.                00:03:17

12                  THE COURT:  All right.  For the             00:03:20

13   defendants.

14                  MR. YARBROUGH:  Good morning, Your          00:03:22

15   Honor, Trey Yarbrough on behalf of Netgear and D-Link.

16   I have with me this morning four attorneys, Your

17   Honor, from Finnegan Henderson, Bob Yoches and Chris

18   Schultz at the counsel table.  And to my right in the

19   middle, Steve Morrissett, and Aaron Capron sitting

20   with Mr. Boxer, the graphics man.  And we're ready to

21   proceed.  Also Mr. Wilcox is here on behalf of

22   Extreme.  The attorneys from Finnegan Henderson

23   represent D-Link, Netgear and Extreme.

24                  MR. CORNELIUS:  Good morning, Your          00:03:56

25   Honor, Bill Cornelius along with Jeff Lindgren from
```

1    Vasquez Benisek & Lindgren, on behalf of defendant,

2    Enterasys Networks.  We're ready to proceed.

3            THE COURT:  All right.  Anyone else?          00:04:11

4            Okay.  All right.  Well, good morning.          00:04:14

5    We're here for, of course, a Markman hearing.  I'll

6    just make -- of course, I'll approach this the way I

7    typically do where I lead to the plaintiff, I suppose

8    how they would like to proceed the order of terms, and

9    we'll go back and forth on a particular term until we

10   completed that one and then move on to the next one.

11           I do know the parties have requested four          00:04:41

12   hours per side -- or two hours per side, four total.

13   Of course, you know, my goal would be for us to be

14   done by the noon hour so you don't have to come back,

15   but that would put us a little less than three hours,

16   so I realize that may not be realistic.  But we'll

17   come back after the noon hour and resume, if that's

18   necessary.

19           So with that, let me go ahead and have the          00:05:09

20   plaintiff begin with the first term and then I'll have

21   the defendant respond.

22           MR. GOVETT:  Your Honor, Brett Govett.          00:05:16

23   We share your goal being done by the noon hour.  We've

24   got a PowerPoint.  I know the defense has a

25   PowerPoint.  What we kind of do, as we've done in the

1    past, do a claim walk-through, then get into the

2    terms.  I'm going to do some of the terms, Ms. Quinn

3    is going to do some of the terms, and, of course,

4    we'll take whatever questions the Court has.

5                    THE COURT:  That will be fine.                    00:05:36

6                    MS. QUINN:  Good morning, Your Honor,             00:05:39

7    may it please the Court.  We have a short walk-through

8    to go through to put the claims in context and moving

9    to the terms.  It should be fairly quickly, go fairly

10   quickly.

11           If we can go to the first slide.  We think          00:05:53

12   today what we're going to show is that Fenner's

13   construction pretty much follows back in the

14   specification.  In many of the terms that we're going

15   to be seeing today, we contend that the construction

16   we've worked up is going to be our position.

17           And the two patents that we're referring to        00:06:12

18   today -- if we can move to the next slide -- the first

19   one is the '224 patent.  The claims at issue there are

20   Claims 3, 8 and 12.

21           Next.  The walk-through we're going to do           00:06:27

22   today focuses on Claim 3, which is a method claim, and

23   we're calling it, for purposes of this hearing, the

24   representative Claim 3.  On patent number '906, the

25   claims at issue are 9, 10, 19 and 20.  And I want to

1    point out to the Court that this patent has a lot of

2    history behind it, a lot of redated patents.  Two of

3    them which we will mention today in connection with

4    some terms are patents numbers '258 and '136, and they

5    are listed in the front page of the patent, because

6    those patents claim specifically associative memory.

7             And now I would like to go through -- we're    00:07:11

8    going to go through Claim 20, as far as the

9    representative claim.  The walk-through we're going to

10   go through first is Claim 3.  And this claim focuses

11   on a method that is used in a communication system

12   that comprises plurality of data networks.  And the

13   purpose of these data networks is to communicate data

14   packets, and we have illustrated that here.

15            And the first step that is listed in    00:07:42

16   connection with this method is receiving a data

17   packet.  And that packet is received at a first one of

18   the plurality of data networks, and this actually is

19   being sent to a second one of the plurality of data

20   networks.

21            The data packet includes a physical address    00:08:02

22   for identifying a device to which data packet is to be

23   routed.

24            And as you can see here, data packet has    00:08:14

25   many fields, have physical address field and the

1    logical address field.

2             And that physical address denotes the packet    00:08:25

3    is to be sent to a physical location and logical

4    location identifies -- the logical address identifies

5    the sender of the data packet.

6             The packet is then examined for the first    00:08:43

7    logical address.  And then looking up in a directory

8    table stored at the node, which is illustrated on the

9    lower corner, the source filtering information is

10    associated with the logical address.  That's the

11    meaning of the reading of the claim.

12             And the last step here is filtering the data    00:09:23

13    packet in response to the source filtering

14    information.  And we have illustrated here how

15    according to this -- in response to the source

16    filtering information, some nodes will be protected

17    from receiving the data packet and some nodes will be

18    allowed to receive the data packet.  And that

19    concludes the walk-through of Claim 3.

20             I'll just quickly go through Claim 20.  And    00:09:46

21    that one is also a method, and this one is a lot more

22    detailed and we want to look over the main highlights

23    here.

24             We have a switching node that has at least    00:09:58

25    three of these IEEE 802 MAC communications ports, and

1    each port has associated with it a MAC address.  And

2    we have illustrated here by showing three ports, and

3    each one below the port, which are the black squares

4    in the switch, has the MAC address.  We illustrated

5    that as MAC address 1, 2 and 3.

6            Next.  And the method here is a packet is     00:10:25

7    received in one port, and we've determined that it is

8    a first MAC address contained in a -- I can't see that

9    very well from here -- it should say MAC source

10   address field of the data packet has a stored

11   association with one of the at least three

12   communication ports.

13           If we can click on that.  We see a first MAC     00:10:49

14   address.  We looked and there is a stored association.

15           Next.  And if there isn't, then there is an     00:10:55

16   association made associating the first MAC address

17   with the one of the at least three communications

18   ports from where that packet is received.  Here is

19   shown as port 2 is then associated -- click again --

20   with the first MAC address.

21           Next.  Then if the second MAC address     00:11:14

22   contained in the MAC destination address field of the

23   packet, then it has a stored association with one of

24   the at least three communication ports as shown here.

25           Click, please.  Again.  It's showing there     00:11:31

1    that there was already an association made prior and

2    now we're looking at the second MAC address associated

3    with the port we've selected here for illustration

4    purposes, port 3.

5         Next.  Causing the received packet to be          00:11:47

6    forwarded to that one communication port that had the

7    association.  If we can click.  We're showing this

8    here with the packet going to the port that had the

9    association.

10        What this -- this clause here also has an          00:12:07

11   "unless," so if the packet calls to be sent to the

12   port unless there is a stored protection record

13   indicating that the packet should not go to that port.

14        If we could click, please.  We've                 00:12:22

15   illustrated this in this matter where the source MAC

16   address is protected from going out of that port.

17        And so if the second MAC address contained         00:12:33

18   in the received packet does not have a stored

19   association -- click, please.  Again.  So this is

20   empty here.  Next -- there is no association.  Then --

21   next -- the packet will be forwarded -- next,

22   please -- to all of the other ports in that switch --

23   next -- except the port from which the packet came

24   from.

25        And that is what we believe shows at a high        00:13:06

1   level the main elements of these claims.  And we hope

2   that that was useful.  And the first term that we

3   wanted to take on at this time is the "logical

4   address" term.

5              THE COURT:  All right.                          00:13:23

6              MS. QUINN:  And Mr. Govett will                 00:13:26

7   be doing that.

8              THE COURT:  Go ahead.                           00:13:28

9              MR. GOVETT:  Your Honor, the "logical           00:13:34

10  address" terms are found in Claim 3 -- if we can have

11  the next slide -- Claim 3 of the '224 patent.  We've

12  highlighted them here.  I won't read them to the Court

13  because I know you're very familiar with this.  But

14  the reason I've got them highlighted here is I'm going

15  to point out some things.  I'm going to address the

16  logical address, the source address and the

17  destination address terms.  And there's differences

18  between them, and so there's differences that are

19  found in the other claims.

20             We did propose to the Court an alternate        00:14:02

21  construction in the briefing that we filed on Monday

22  that we believe moves closer to what the defense has

23  proposed.  I'm going to talk about that.  I'm going to

24  go through what I believe is some pretty compelling

25  evidence from the patent specification as to why that

1    construction, if the Court is not willing to adopt our

2    initial construction, is thoroughly supported.

3           If we'll go to slide 24, we've got just a          00:14:26

4    split of our original construction and the defense

5    construction.  And down here at the bottom we show

6    where the logical address is found within the data

7    packet.

8           Slide 25 is the discussion about the logical      00:14:44

9    address versus the physical address.  The logical, of

10   course, is assigned by a network.  We'll talk about

11   that in a minute.  The physical is assigned basically

12   by the manufacturer of the equipment.  It's burned

13   into the equipment at the time of manufacture.

14          And we cited column 11, lines 1 through 4.         00:14:59

15   This is a very important part of the specification.

16   In the present system, the physical address structure

17   is removed from the design and operation of the

18   internet routing by treating the message addresses as

19   a symbol string without predetermined internal

20   structure and processing them as if they are a unique

21   identification code representing the host.

22          I'm going to talk more about this in a             00:15:24

23   minute.  The cube of the patent and the real trick

24   here and a big part of the novelty that's disclosed --

25   there's a lot of novelty disclosed, but a big part of

 1    the novelty that's disclosed, I'm going to talk a lot

 2    about this this morning, is how it's treated.  It's

 3    not that it does not have structure, it's how the

 4    structure is treated.  And this is discussed right

 5    here.

 6            We don't pay much attention to the                    00:15:50

 7    structure.  The address can have structure, but it's

 8    how we treat it and how we process it.  And I'm going

 9    to get to that in a minute.

10            Slide 26, again, I'm just going through, if           00:16:00

11    you can go ahead and bring up the whole thing.  The

12    internet address is automatically assigned by the

13    network or the user.  That's why it's the logical

14    address.  Physical address is associated with the

15    device and it's assigned by the manufacturer.  We've

16    spoken about that.

17            We've got the next couple slides, Figure 1.           00:16:21

18    Go ahead.  Next click we show there's the node,

19    there's the packet moving to the node.  The patent

20    tells you that this is the -- Figure 1 has been

21    modified vis-a-vis of the invention.  If you can click

22    one more time.  Go ahead.  This is -- the MAC address

23    is the physical address, the IP addresses are logical

24    addresses.  It's very clear from the drawings that are

25    found in the patent, so that's why the original

1    construction stated the examples of IP addresses are

2    logical addresses.  Logical addresses are not limited

3    to IP addresses, that's just one example of them.

4            If you'll look at slide 29.  This is just          00:17:09

5    support from the specification.  There's a lot of

6    briefing and discussion about needed some changes and

7    so forth with respect to the logical address.  But

8    there's a lot of discussion in the specification where

9    the logical address structure is discussed without

10   those limitations.  And we've cited them up here on

11   the screen at columns 11, lines 1 through 4, lines 12

12   through 18, and column 15, lines 51 through 57.

13           So where does that leave us?  Next slide,           00:17:40

14   slide 30.  The term is broader, logical address is

15   broader than a network identification code or

16   identifier.  It identifies a sender or a receiver in

17   the network.  It's part of the data packet header, as

18   we've shown.  And it's different than a physical

19   address.

20           Next slide, 31.  The defense, they want to          00:18:02

21   rely on the '480 prosecution history.  That was

22   different claims, different embodiments of the

23   disclosure that are claimed.  The '224 does not compel

24   the same construction.  I'm going to get to that in a

25   minute with respect to alternative construction.

1  Feature of mobility does not limit the claims to the

2  embodiments which are accomplishing it.  There is

3  broader claims that are not related to the mobility.

4           Now, let's look at slide 32.  Slide 32, Your    00:18:29

5  Honor, shows the distinction between what we propose

6  is an alternative.  As the Court can see, we move

7  closer to what they've proposed, not all the way,

8  because we don't believe all the way is appropriate.

9  This construction that they've taken here on the

10  right-hand side is verbatim word-for-word, comma for

11  comma, out of the Court's claim construction with

12  respect to the '67 patent of the IP address in the

13  first Fenner case.

14           The logical address, as I've said already,    00:19:04

15  is broader than the IP address.  This is not an

16  appropriate construction.  The unchanging is not

17  supported with respect to IP address.  It's in the

18  internal structure, which I'm going to spend a good

19  bit of time on, is just overwhelmingly not supported.

20           I've got this up here on the screen.  If we    00:19:23

21  can go to the next slide 33.  This is another quote

22  from the patent specification about the internal

23  structure.  In the present system, the physical

24  address structure is removed from the design and

25  operation of the internet routing by treating.  Very

1    important how it's treated.  By treating the message

2    addresses as a symbol string without predetermined

3    internal structure.

4          Nowhere in the specification does it say          00:19:50

5    there's no structure or you can have no structure.  It

6    talks about how it's treated and processing them as if

7    they're a unique identification code representing the

8    host.  That's at column 11, lines 4 through 9.

9          In fact, if you look at the next slide,          00:20:06

10   slide 34, column 16, lines 44 through 50, the proposed

11   routing table directory structure 130 needs only to

12   know the length and values of the address octets to

13   locate a unique table entry for that address.  This

14   novel directory access technique does not rely on any

15   known structure of the address field other than

16   knowing that it is a sequence containing a known

17   number of symbols.

18         So again, that's more support for the fact       00:20:37

19   that it can have structure, so therefore saying --

20   arguing for a claim construction that says it has no

21   internal structure is incorrect.  Because it says

22   right here, it doesn't -- you can have known

23   structure, but you just don't rely on it.  I'm going

24   to talk, again, more about that in a minute.

25         If we look at the next slide, slides 35.         00:21:01

1   This is from the '224 -- go ahead and bring it all up

2   -- from the '224 patent file history.  One benefit of

3   filtering -- and we're talking about source filtering

4   here using the logical address -- based on the

5   logically -- that should be logical address of the

6   source is that it is device independent.  It doesn't

7   matter where it is located.

8           The next.  Thus, source filtering may take        00:21:26

9   place in the internet environment, in which physical

10  address of the source was stripped from a packet by an

11  intermediary node, or with a mobile source which may

12  access data networks through different network media,

13  and thus may not be assigned the same physical during

14  each access.

15          The '224 file history is found in               00:21:48

16  Defendant's Exhibit F, this is pages 7 through 8.

17          So this invention, this claimed invention        00:21:53

18  here works in the mobile environment, mobile IP

19  environment, as well as the nonmobile IP environment.

20          And if we looked at the number of pages in       00:22:03

21  the briefing arguing the '480 patent file history,

22  that's at Defendant's Exhibit G, pages 24 through 25,

23  but if you look at, Your Honor, the complete file

24  history at those pages, and some of it is cited, and

25  they rely on that in the Court's earlier Markman

1  decision construing a different term of a different

2  patent.  Although it's a related patent, yes, but it's

3  a different term of a different patent.

4          And at page 23 -- actually if you look at          00:22:36

5  page 22 of this Exhibit G, we don't have it up here,

6  but I'll hand it to you in a minute, it talks about

7  the prior art on which the rejection is based.  And it

8  goes through and it talks about hierarchal addressing

9  and it talks about a phone number.  And this was cited

10  by you in the initial construction of IP address,

11  different patent, different claim.

12          But when we get to page 24 right here, page          00:23:01

13  24 states:  There are significant differences between

14  the prior art and the claimed invention.  A message in

15  applicant system is routed solely in accordance with

16  unique, fixed and unchanging codes.  And then it cites

17  to Claim 1, lines 26 through 30, of the '480 patent.

18          The '480 patent, Your Honor, did have claims          00:23:26

19  which specifically claim the first -- Claim 1, first

20  claim limitation is to a fixed -- a first unique,

21  fixed and unchangeable code.  The second claim

22  limitation is to a second unique, fixed and

23  unchangeable code.

24          But I want to go back to the file history          00:23:49

25  that's related to this patent.  In accordance with the

1   unique fixed and unchanging codes that identify the

2   source and the receiver wherever the receiver is

3   located in a system of interconnected networks, it is

4   non-hierarchal.  Now here's the key, this means that

5   when a receiver in applicant's system both

6   interconnected networks moves from communication with

7   a data network in Texas to a data network in Japan,

8   it's number, address or identification code, open

9   paren, or whatever name you want to call it, close

10  paren, remains the same.

11          Applicant's invention, as defined in Claims    00:24:32

12  1 through 9, again related to '480, stores the

13  non-location-specific address or code of the receiver,

14  along with the connecting node to which to send a data

15  message for eventual routing to its destination.

16          Now, I want to stop a minute on the Texas to    00:24:45

17  Japan.  It's number, address or identification code

18  remains the same.  That's the phone number, Your

19  Honor, that we had just talked about in the '480

20  specification.  And I'll hand these up to you.

21          If I might approach?                            00:25:03

22              THE COURT:  Okay.                           00:25:05

23              MR. GOVETT:  This is from Exhibit G.        00:25:06

24  And it's pages 22, 23, 24 and 25.

25          I've marked the number part there, because     00:25:14

 1  the number part is the key.  It's like when you go to

 2  Home Depot and -- or Lowe's or wherever, a sporting

 3  goods store, and they say, "What's your number," and

 4  you give them the number, you know, (903)567-8282, and

 5  they say, "Oh, okay, Mr. Govett, thank you, we see

 6  that you were in here two weeks ago or what-have-you,"

 7  it's an identifier.

 8          Now, does that number, (903)567-8282, have          00:25:42

 9  structure?  It might.  To some people it might.  But

10  is Home Depot or Academy or Lowe's or Target or

11  whoever using that structure?  No, of course not,

12  absolutely not.  They're not using that structure.

13          And that's why, when you look at everything,          00:26:04

14  and I'm going to get to more cites in the

15  specification here, to say that it has no internal

16  structure is an error.

17          And we put, Your Honor, in the booklets, the          00:26:13

18  presentation booklets that we passed out, these two

19  pages right here, '224 patent excerpts.  And the

20  reason that we put these two pages in there, the '224

21  patent excerpts, is because this is the compelling

22  evidence that I was talking about where you shouldn't

23  come into court and argue the issue of structure,

24  because structure is not the issue.  It's in the front

25  pocket, Your Honor.  You found it.  Okay.

1             Column 4, lines 59 through 61:  The system      00:26:50

2     improves over the prior art by using a message format

3     that is structure independent of the location of the

4     destination of the message receiver.

5             Not there's no structure, it's structure      00:27:01

6     independent because of how it's treated, how it's

7     processed.

8             Column 5, lines 30 through 39:  The present      00:27:07

9     invention provides a very fast, automatically

10    expandable, source filtered -- that's the '224

11    patent -- internet routing scheme totally independent

12    of the internal logical or physical structure of the

13    network addresses in the message format that it is

14    routing.

15            Right there it's telling you, hey, it's got      00:27:28

16    structure, but what we're doing to it is independent

17    of the structure.

18            Column 6, lines 20 through 36:  Thus the      00:27:36

19    present invention relates to a system for routing a

20    message between a source and a destination and which

21    utilizes a message format that is

22    structure-independent of the location of the message

23    destination, said system comprising at least a first

24    signal transceiver device having only a first fixed

25    unique identification code wherever the transceiver

1  device may be located.

2          Again, the unchanging comes from the '480                    00:28:02

3  patent, and there's only one citation in the spec of

4  the '224 and the '480, I believe it's at column 2,

5  where it talks about fixed, unique and unchanging.

6  And then it goes on to claim that in the '480 patent.

7          And there's, in fact, a dependent claim, I              00:28:20

8  think it's dependent Claim 11, I'm going to talk a

9  little bit more about in a minute, that does change

10  the claims of fixed, unique and unchanging with

11  respect to the Claim 8.  And it's talking about the

12  source address.  Nowhere is the logical address

13  discussed in terms of being unchanging.

14          But if you look down at the bottom of the             00:28:43

15  first page here, it talks about a message format

16  containing only the first and second transceiver fixed

17  unique identification codes and addresses of routing

18  nodes with a message format that is

19  structure-independent of any transceiver location

20  code.

21          Moving to the next page, column 7, lines 2            00:28:58

22  through 5:  When modified by the present invention,

23  the system of Figure 1 -- that's the drawing that I

24  had on the board a little bit earlier with the planes

25  and ships -- enables a message routing system using a

1 message format having an internal logical or physical

2 structure that is totally independent of the message

3 receiving host location address.

4          Column 11, we had this on the board a little      00:29:24

5 bit earlier, I won't read it into the record again.

6 But again, it's the physical address structure is

7 removed by treating it as a symbol string without

8 internal structure and processing them as if they're a

9 unique code, just like when you go to Home Depot, give

10 them your phone number.

11          Column 21, there hasn't been a lot of            00:29:48

12 briefing on column 21 and we haven't focused on it in

13 the slide presentation, but it's very, very

14 compelling, column 21, lines 20 through 40.  It's a

15 whole paragraph that we've block quoted here.  These

16 are all taken straight out of the spec, by the way.

17 We didn't retype them, we just cut and paste them in

18 here.

19          Column 21, lines 20 through 40:  Thus there      00:30:09

20 has been disclosed a data communication system which

21 uses a routing table access method that treats network

22 addresses as variable length symbol strings without

23 internal structure; i.e., as flat addresses, to

24 simplify the handling of mobile end-systems

25 simultaneously connected to multiple access points.

1          I'm going to skip the next sentence.                    00:30:33

2          The technique -- and this is important                  00:30:35

3    because this ties into the telephone number issue.

4    The technique is also applicable to real-time database

5    applications such as a network name service which

6    relates to a logical name, alphanumeric name, to its

7    universal identification code.

8          For example, an automatic telephone                     00:30:54

9    directory service could use this system to enable

10   entry of a particular name and receive the telephone

11   number of that name.  Thus, the novel system allows

12   one entity having a universal identification number;

13   i.e., the phone number that it just discussed in the

14   preceding sentence, to communicate with any other

15   entity in the system having a universal identification

16   number but whose physical location is unknown.

17   Because the internet router system is based on flat

18   logical address space, it provides efficient routing

19   of both multicast and unicast packets independent of

20   the internal network address format or structure.

21   Again, independent of the structure.

22          So we've cited to Your Honor at least six,             00:31:40

23   and I believe there's one more in the slides, plus the

24   file history from the '480 which completely support

25   with respect to logical address our proposed alternate

```
 1   claim construction which removes the unchanging and

 2   removes the part about no internal structure so on and

 3   so forth.  It's very compelling.

 4           And the reason the last quote that I've          00:32:06

 5   included on page 2 there is important is because where

 6   it states "thus there has been disclosed," at the end

 7   of column 40, Your Honor, the end of column 40 on the

 8   '224 patent is the end of the original disclosure.

 9   And that's all we're dealing with here.

10           When you get to -- I'm sorry, it's at column    00:32:36

11   21.

12           When you get to the bottom of the next          00:32:50

13   paragraph, and it says referring now to Figure 5

14   through 9 at the column 21 of the '224 patent, that's

15   the prosecution in part.  That's the new matter that

16   came in.  Everything that we're talking about today

17   we're not going to go beyond column 21, line 40,

18   because all the claims that we're dealing with have a

19   priority date of the 1989 filing of the original

20   specification of the '480.

21           And I've got a copy of the '480 patent here,    00:33:24

22   Your Honor, that I would like to hand up in just a

23   minute, that supports what I'm saying.  If I could

24   just pass it up right now.  And it's also at column 21

25   and column 22.  This is the '480 patent.  You can see
```

1  at the bottom of column 21 the same language.  It's a

2  little bit different, but you see where it ends.  The

3  '480 ends after the further reversible arithmetic code

4  compression right there.  So everything that we're

5  talking about is going to be found in the original

6  disclosure which cuts off just above referring now to

7  Figs 5 through 9.

8         So we believe the alternative claim                    00:34:04

9  construction for logical address is fully supported.

10  And when we get to the source address and the

11  destination address, I'm going to talk a little bit

12  more about those in terms of why claim and ordinary

13  meaning is appropriate and stop with that.

14         Do you have any questions, Your Honor?                00:34:20

15              THE COURT:  No, not any right now.                00:34:22

16              MR. GOVETT:  Thank you.                           00:34:25

17              THE COURT:  Response?  And if                     00:34:26

18  defendants would like to provide an overview as the

19  plaintiffs did, that would be fine.  If you want to go

20  straight into the terms, that would be fine as well.

21              MR. YOCHES:  Thank you, Your Honor.  My           00:34:56

22  name is Bob Yoches.

23         What I would like to do is, again, begin              00:35:01

24  with an overview, but I guess ask you to bear with me

25  a little bit.  Our organization is slightly different,

1    but I can adapt to how it's been presented here.

2            But what I noticed about the plaintiff's          00:35:14

3    presentation is that there are some fundamental issues

4    here that need to be resolved.

5            In the briefing, Mr. Fenner would have you       00:35:28

6    believe that he came up with the invention that

7    provided for the internet and the reason for the

8    popularity of the internet as we saw a key problem.

9            But the truth is, he's all but abandoned         00:35:41

10   that invention.  When you listened earlier to the

11   explanation of the claims, both in the '224 and the

12   '906 patent, what struck me was the fact that they

13   didn't have any figures from the patent.  They're

14   trying to describe their claims by comparing them to

15   the accused device, not to their own patent.

16           So I'm going to take you back to the patent.      00:36:04

17   Because although his technique was addressed to one

18   problem and one problem only, which is how do you

19   solve the problem of mobile devices using the

20   internet, now they claim that their invention isn't

21   tied to mobile devices at all.

22           And the reason they're doing this and the          00:36:24

23   reason they have to do this is because the solution

24   that Mr. Fenner suggested, although it may have been

25   elegant, was never adopted, it just simply is not

1   used.

2          And so the question, the fundamental issue    00:36:35

3   here is whether or not Mr. Fenner can, more than a

4   decade after he filed his original application,

5   redefine his invention, recast it trying to claim

6   things that he never contemplated that simply aren't

7   his invention.

8          Plaintiffs say of course they can do that    00:36:55

9   and they criticize any attempt that the defendants

10  have made to look at the patent itself by saying, oh,

11  no, no, no, you're just improperly trying to limit the

12  claims of the preferred embodiment.

13         But we say what Mr. Fenner is trying to do    00:37:09

14  is improper because the specification of the

15  prosecution history unambiguously told the world what

16  Mr. Fenner regarded as his invention and that the law

17  does not allow you to redefine your invention later on

18  if you have not disclosed that.

19         In fact, if you look at 35 U.S.C. Section    00:37:29

20  112, paragraph 2, which is the portion of the patent

21  law which tells you what the claims are about, it

22  says:  The specification shall conclude with one or

23  more claims particularly pointing out and distinctly

24  claiming the subject matter the applicant regards as

25  his invention.

1          So when we refer to the specification and          09:37:49

2  when we refer to the prosecution history, what we're

3  doing is pointing out what the applicant regarded as

4  his invention when he filed his application.

5          And indeed, the Federal Circuit in the          09:38:02

6  Phillips case, which is the case that set forth the

7  basic -- summarize, if you will, the basic principles

8  of claim construction, pointed that out.  And the

9  highlighted portion indeed is a theme that we're going

10  to have throughout this presentation, which is that:

11  The construction that stays true to the claim language

12  and most naturally aligns with the patent's

13  description of the invention will be, in the end, the

14  correct construction.

15          So let's take a look then at what the          09:38:29

16  invention in this patent is.  This is Figure 1.  What

17  Figure 1 was talking about is you have a problem in

18  the internet, and the particular problem here is what

19  do you do with people that want to move around,

20  specifically if you're on an airplane or you're on a

21  boat.  If you had a fixed address and you moved, the

22  question is how are people going to communicate with

23  you.  And let me analogize this to the postal system.

24          So if I have a fixed address and I now move,          09:39:08

25  the way I can let people know what happened is I can

1  write all of my friends and everybody and say I now

2  have a new address.  And indeed in the patent

3  Mr. Fenner explains this, but explains what the

4  problem is.  Because especially the mobility we're

5  talking about with these personal digital assistants

6  and laptop computers, there would be messages going

7  out flooding the internet telling everybody about the

8  new addresses.

9         So he wanted to avoid solving this problem         09:39:37

10  by changing your physical address.  So what was the

11  second solution?  The second solution -- and the

12  patent talks about this -- is to put a fixed unique

13  and unchanging address as your logical address and

14  then you keep that address wherever you move but you

15  tell, if you will, the infrastructure what your new

16  address is.

17         It's similar to when you move in the postal         09:40:07

18  service and you send a change of address form to the

19  post office, the post office will now reroute the

20  address for you because it's got the new information.

21  So that way you don't have to tell all your friends,

22  at least initially, about your new physical address,

23  the post office takes care of it.

24         But again, what was the problem?  The         09:40:29

25  problem was is that the data records that the post

1  office would have to consider, in this case the

2  internet would have to keep, would be enormous.  And

3  so what Mr. Fenner's invention was, is he came up with

4  a new way of compressing that address table that the

5  internet has, a new efficient way so that these

6  routers, which are in charge of making sure the

7  messages get where you're supposed to get, weren't so

8  large.  And this is the arithmetic coding that's being

9  done that relates the addresses together with the

10 instructions for what to do with that address.

11         And this has an advantage we'll talk about        09:41:11

12 with regard to addressing of being reversible, which

13 is what saves -- it's not only a compression, but it's

14 reversible compression, and that saves all the space.

15         And that's what this invention was about,         09:41:24

16 that's what was disclosed, and that is all that is

17 disclosed.

18         The patent here, referring to column 10, is       09:41:30

19 explaining what that problem was, column 10, lines 55

20 through 58, and also later 62 through 67 makes it very

21 clear what problem Mr. Fenner was addressing.

22         When you're moving the hardware interface,        09:41:51

23 you somehow have to change where the messages are

24 going to go.  And the way this was done -- next slide

25 -- is you took this address -- and you saw this

1  picture in the presentation made by plaintiff -- and

2  in the message you see there's an address and these

3  particular fields and destination address and the

4  source address are the logical address, in other

5  words, they're the things that don't change, and you

6  process it.

7          And this is the processing that does the                    00:42:21

8  arithmetic code compression, then gives you an index.

9  And that's how you got a smaller table over here and

10  that's how you find out what to do with each message,

11  is you got a compressed table here and that way this

12  system can work because this takes much less space to

13  store.

14          How does that play out with logical                        00:42:44

15  addresses?  And so we'll take this the way the

16  plaintiff did, we'll just talk about the logical

17  address.  And indeed I must confess a little bit of

18  confusion here because I don't know which construction

19  to address, so I'm going to address the original

20  construction and then explain to you why their

21  alternative construction, which is pretty much the

22  same as ours, is a lot better but not quite good

23  enough.

24          Next slide.  So this is, for example, in                   00:43:25

25  Claim 3, the reference to the logical address, and

1   your logical address in this case is something that is

2   different from the physical address, in this case it

3   identifies the sender of the packet.

4          Next slide.  If we blow up that figure I          00:43:43

5   showed you before, Figure 4, you'll see that in this

6   arriving packet there is this field IP.ISO which has

7   both the destination address and the source address.

8   These are logical addresses.  And those addresses have

9   a part here which tells the switches how long the

10  address is and then what that address actually is, the

11  fixed unique and unchanging address.  And same thing

12  with the source address.

13         And this invention talks about dealing only      00:44:12

14  now with the logical addresses.  Part of this

15  invention is it were only processing logical

16  addresses, that's how this whole thing can work.

17         Now, let me go through the intrinsic             00:44:27

18  evidence that supports our definition.  And that

19  intrinsic evidence supports each one of the pieces.

20         Next slide.  This is an excerpt from column      00:44:36

21  4 of the '224 patent.  And notice that the patentee is

22  not talking about a preferred embodiment, it is

23  talking about the invention.  And he says, he

24  announces to the public:  The present invention

25  overcomes the disadvantages by a flat, as opposed to

1   hierarchal, logical routing address space.

2           Now, what's a flat address?  Well, Your   00:45:05

3   Honor, your previous case that Mr. Govett referred to

4   addressed what a flat address was, and it's something

5   that has no internal structure.  That's what led to

6   that construction there.

7           On top of that they're a unique identifier.   00:45:17

8   So this is equating the invention to what the address

9   is.  It's flat.  It has nothing in there that -- it

10  has no internal structure that suggests the network

11  connection.  In this case it's unique.

12          Next slide.  And if you look at column 6,   00:45:32

13  again I'm not going to read the entire thing to you,

14  but it's defining the invention.  It's not defining a

15  preferred embodiment.  And it says -- it uses the

16  message what's structure-independent?  The message

17  format.  It's true, as Mr. Govett pointed out, that

18  the machines don't pay attention to the structure, but

19  that's because the message itself has no structure.

20  And here is a disclosure that the message format is

21  structure-independent of the location of the

22  destination.

23          So indeed both things are true, but the   00:46:06

24  message has no structure.  And because the message has

25  no structure, the hardware doesn't pay attention to

1    the structure.

2          Again, the invention, has fixed unique          00:46:18

3    identification codes, that's also disclosed.  There's

4    a disclosure here also that it's a series of symbols.

5          So this is defining the invention.  This is          00:46:33

6    why the original construction that plaintiffs offered

7    is wrong, because they ignore the fact that the

8    patentee, when he filed his application, was defining

9    and limiting his invention to logical addresses that

10   had certain requirements.

11         If you look at the next slide, slide 11, it          00:46:52

12   explains the way you overcome the disadvantages of

13   prior art is you assign a fixed, unique and unchanging

14   identification code, the exact terms that were used,

15   to both host A and host B.  And those are the exact

16   terms we use.  And again, a patent, as originally

17   filed, explained that the invention was in using this

18   type of address to solve the problems of the prior

19   art.

20         If you look at the next slide, column 5,          00:47:32

21   again, it's defining the invention; not an embodiment,

22   but the invention.  And it says the internet routing

23   scheme is independent of the internal logical or

24   physical structure.  It's, again, talking about the

25   scheme is what's independent of the structure and it's

1    a string of symbols, just as our construction points

2    out.

3              And again, one more example is in column 11,    00:47:58

4    and this is the very same citation that Mr. Govett

5    talked about, but it talks about removing the physical

6    address structure.  This will be important later.  But

7    you're treating the addresses as a symbol string

8    without predetermined internal structure.  They're

9    unique.

10             So the patent indeed does talk about the    00:48:25

11   fact that you do not treat these addresses as if they

12   have a structure, but it also explains that the

13   addresses themselves have no structure.

14             Next slide.  This is from the prosecution    00:48:39

15   history of the '224.  It explains that the logical

16   address is independent of the source's physical or

17   media address.  So this is talking about a feature of

18   the address, not of how it's treated.  It's device

19   independent.

20             Again, slide 15.  The address is device    00:49:03

21   independent.  Again, in the prosecution history,

22   they're talking about the address being device

23   independent.  And if we go to the '480 patent, which

24   the prosecution history, next slide, which they, first

25   of all, claim that we're not able to use and then they

1   used, a message in applicant's system is routed solely

2   in accordance with unique, fixed and unchanging codes.

3        Now, the interesting thing about the '480          00:49:36

4   patent, it is true that those claims did recite fixed,

5   unique and unchanging codes.  But in the prior case

6   where you were construing IP address, for some reason,

7   according to them, it was proper to rely upon the '480

8   patent and use unique, fixed and unchanging codes,

9   even though those claims did not have IP address.  But

10  in this case these claims have logical address, it's

11  improper to use what's said in the '480 patent.

12       And I would argue that the same logic which      00:50:04

13  led to interpreting IP addresses, unique, fixed and

14  unchanging codes, and that patent apply as well as in

15  this patent because, again, the applicant was defining

16  his invention as limited to this type of address.

17       Now, let me address, then, the modified or        00:50:22

18  the alternative construction, because there are two

19  areas of disagreement.

20       One of the areas is should unchanging be in       00:50:31

21  there or not?  And the plaintiff has taken the

22  interesting position that it's both wrong and

23  redundant to something that's correct.  And I don't

24  know logically how you would hold those two thoughts.

25       But if it's redundant, if we take the idea        00:50:45

1   that you really don't need fixed encumbrances and

2   unchanging, then my point would be why not include it

3   if we're accurate, because according to the plaintiffs

4   at least, it does no harm.

5        In my mind at least there's a slight                    09:51:01

6   difference between fixed and unchanging.  And as one

7   of my partners pointed out, my interest on my credit

8   card is fixed, but it can change.  And to be fixed

9   more implies that it's tied to the particular address,

10  this address is tied to a particular source and

11  unchanging means and it does not change.

12       So the second issue is that I've already            09:51:23

13  addressed is a question of whether or not we should

14  define the address by a feature of the address, we

15  should define the address by how it's used.  And the

16  reason I would suggest that it's better to define the

17  address by a feature of the address is because the

18  plaintiff's construction raises the following

19  questions:  The plaintiff's constructions say that the

20  address is processed without regard to the physical

21  location or connection, but they don't say who is

22  doing the processing nor do they say where the

23  processing is occurring.

24       So we're going to end up here, when we look        09:52:03

25  at validity and we look at infringement, with adding

1   another question of exactly what processing is

2   referred to.

3         If indeed this address, this logical address   00:52:12

4   has no internal structure, then if that's the case,

5   then obviously you can't process it using that

6   structure.

7         Now, the point they bring out, and I'll   00:52:26

8   address here and maybe put this to rest is, what if

9   you arbitrarily choose some number which in a

10  different system could have some structure.  And I'll

11  be willing to say that -- I will concede that the

12  internal structure, at least that we're referring to,

13  is internal structure in the context of this system.

14  So you may want to use a telephone address as your

15  logical address.

16        But the telephone address has no internal   00:52:52

17  structure in the internet.  It's a bunch of numbers in

18  the internet.  And so when we refer to the address

19  having no internal structure, it means in this system.

20  It does not in this system in the internet tell you

21  where you are.  In the phone system, AT&T, the

22  telephone number may tell you where you are, but in

23  the internet it doesn't tell you where you are, and

24  that may just resolve this problem.

25        THE COURT:  All right.  Well, let's   00:53:22

 1   move on to the next term, "source address," I think.

 2                   MR. GOVETT:  Yes.  I'll be pretty brief    00:53:31

 3   in this one.  There's a couple points I would like to

 4   make.  Let's go to slide 38, if we could, please.

 5                   Your Honor, we've got -- I'll just address    00:54:16

 6   them both, the source address and then there's the

 7   source address for logically identifying.  That's the

 8   next slide.

 9                   Our construction is very clear, very simple,    00:54:24

10   for a reason.  The source address is the address of

11   origin.  The language in Claim 8, this is Claim 8 of

12   the '224 patent, tells you a source address for

13   logically identifying a sender of the data packet,

14   independent of the sender's physical media address.

15                   So you don't need all this reading in    00:54:46

16   additional claim limitations, additional language,

17   which is inappropriate.  The reason it's inappropriate

18   is because Claim 9 depends from Claim 8 and Claim 11

19   depends from Claim 9.

20                   If you look at Claim 11, Claim 11 is the    00:55:03

21   controller of Claim 9 wherein the source address

22   includes a unique, fixed and unchanging code for

23   uniquely identifying the sources to each network in

24   the plurality of networks.

25                   So if you were to read what they wanted in    00:55:16

1  Claim 9, you would have wherein the fixed, unique and

2  changing identifier that has no internal structure to

3  suggest no network connection location, and that is

4  assigned to the host sending the data packet, includes

5  a unique, fixed and unchanging code for uniquely

6  identifying.  It just really makes no sense.

7          And so you don't need that.  We are talking    00:55:40

8  about the source address, we're talking about source

9  filtering, and the logically identifying talks about

10 the logical part of that address.  And so the claim

11 language takes care of it.  You don't need to do any

12 further construction other than really the sources,

13 address of origin, if you really even want to construe

14 that.  02 Micro, of course, you don't necessarily need

15 to.

16         Slide 39, source address is construed here,    00:56:07

17 and all we did was just somewhat basically read the

18 claim language back.  And that's essentially what they

19 did as well.  And so it's not --

20         I can answer any questions you have, but        00:56:18

21 really that's pretty much the crux of the argument.

22 There's not a lot to argue about here.  It's the

23 Court's decision.

24              THE COURT:  All right.  Thank you.         00:56:29

25         Response?                                       00:56:30

1            MR. YOCHES:  I can be short as well,      00:56:50

2  too.

3            As plaintiff pointed out, the claims explain  00:56:53

4  that both the source and destination address are

5  logical addresses, they are logically identifying --

6  the recipients are logically identifying the sender.

7  And so since they are logical addresses, we think all

8  we've done is just in the definition defined them as

9  logical addresses by putting in the same definition

10  for source and destination addresses we did for

11  logical address.

12            But narrowing it so the source address is a      00:57:34

13  logical address, the logical address indicates the

14  source and the destination address is a logical

15  address that gets the destination.

16            Mr. Govett, I thought, seemed to concede      00:57:45

17  that by saying it's in the rest of the claim here, but

18  we prefer to make it more explicit there, so we don't

19  sit there and argue later on that maybe this source

20  address is not a logical address and that is something

21  different between a logical address and logically

22  identifying that source as recipient.

23            And his other argument is essentially a      00:58:07

24  claim differentiation argument that I think we've

25  dealt with in the papers very well.  But the simple

1    fact of the matter is, there's two things to remember

2    about claim differentiation:  One is you can't use

3    claim differentiation to broaden a claim term beyond

4    what it is supposed to be.  Since the source address

5    can't be broader than a logical address, the fact that

6    there are some attributes of a logical address that

7    are in Claim 11 doesn't allow you to expand the scope

8    of source address beyond what's disclosed and what

9    they have to the claim.

10           The second thing is, claim differentiation        00:58:45

11   only applies if the only difference between a

12   dependent claim and a claim from which it depends is

13   the limitation of issue here.  And there's a lot of

14   differentiations between Claim 11 and Claim 8,

15   including all the stuff in the intermediate Claim 9.

16           So just the whole idea of claim                   00:59:05

17   differentiation just doesn't apply in this case.

18                THE COURT:  All right.  Thank you.           00:59:12

19                MR. GOVETT:  Similar arguments, Your         00:59:14

20   Honor, if I can move ahead to destination address.

21   It's really the same, just with destination.  Of

22   course, our proposed construction is the address where

23   something is sent that logically identifies a

24   recipient of the data packet.  That's what the claim

25   says.  And the source address we had the logical

1  identifier in there as well.

2        Really you don't need to construe this, Your  00:59:39

3  Honor, it is using the logical address there.  I think

4  the claim is very clear there.  I never believed there

5  was a dispute on that.

6        The destination address, of course you've  00:59:47

7  got the source, where it's coming from, the

8  destination where it's going to.  That's basically

9  what we went in and did.  And I think all this other

10  language that they're attempting to add really

11  confuses the issue in light of the claim language,

12  because the claim is very specific as to what's going

13  on.  So that's it.

14              THE COURT:  All right.  Any response?  10:00:07

15              MR. YOCHES:  No.  10:00:10

16              THE COURT:  Okay.  Mr. Govett.  10:00:11

17              MR. GOVETT:  Yes, Your Honor, Ms. Quinn  10:00:13

18  is going to take it over from here and take the next

19  term, which is the "looking up in a directory."

20              THE COURT:  Okay.  10:00:19

21              MS. QUINN:  Yes.  The next term is the  10:00:22

22  looking up in a directory table stored at the node,

23  source filtering information associated with the first

24  logical address.

25              And if you can go to slide 41, it shows  10:00:35

1    there what we're talking about.

2            This term appears in method Claim 3 and it's    10:00:40

3    the only claim in which this phrase appears.  And what

4    we're arguing here is there are three major decisions.

5    We think that the looking up verb, it's looking up,

6    it's a phrase used in layman's terms for determining

7    how to look up in a database.

8            The defendants are attempting to add to this    10:01:05

9    looking up step additional steps of retrieving and

10   additional structures and also additional steps of

11   compressing, arithmetic compressing as distinct from

12   hashing.

13           Another limitation they're trying to add in    10:01:22

14   is adding structures that are not called for like

15   source filtering information contained in a record

16   identified by a unique value.

17           None of these limitations are cited or    10:01:35

18   called for by the method claim itself, there should

19   not be anymore structure added to it.  The parties

20   agree on what the source filtering information is.

21   And that in the chart that we submitted to the Court

22   is term number 2, and that construction agreed to is

23   information used to determine whether to filter a

24   packet base on the packet's source address.  There's

25   no need to add how the source address is formed and

1   notions of a record that is identified by compressing.

2   If we can go to the next slide.  Here we          10:02:22

3   have some summaries of why we believe this.  The

4   specification is clear.  It talks generally about

5   storing information and tables.  This is a database

6   organization issue.  The method claim does not go into

7   how those tables are organized or how the records are

8   created, it's just basically looking up that

9   information.

10  The claim does not require any records.  In        10:02:46

11  fact, records are limitations in dependent claims, and

12  we're going to see that in minute.  And further, they

13  want to include into this fairly basic term the notion

14  of arithmetic compression and coding.  Well,

15  arithmetic coding and compression in the patent is

16  described in many different ways and there are many

17  embodiments as to how the indexes and things going to

18  these tables can be created and they tried to limit it

19  to a very specific way of coding by arithmetic

20  compression.  And we believe that's improper because

21  they are dependent claims, also, that go into much

22  more detail as to how these records are created.

23  So we don't believe this term should be          10:03:32

24  styled with notions of retrieving records, compression

25  or arithmetic compression or unique identified values.

```
 1                 And one of the things they keep saying is          10:03:44

 2     that this patent somehow makes it clear that this is

 3     absolutely necessary.  And we don't believe the patent

 4     is -- requires that.

 5                 One thing that we want to point out to the         10:04:03

 6     Court is that the main patent here, the parent of all

 7     these patents is the '480 patent, that patent

 8     described in general the embodiment, the mobile users

 9     moving from node to node and needing this unique ID,

10     and then the children of this main patent claim

11     additional inventive concepts that were described in

12     very general terms in the '480 patent.

13                 That meaning that not every description in         10:04:35

14     these patents, because they all have a common

15     description, all these patents describe the same

16     invention in the same terms is something, you know,

17     that is done in prosecution of patents which is one

18     main description.  You can have many inventions

19     describing one patent.

20                 And what they're trying to do in these two         10:04:56

21     patents, the '224 and the '906, is to put in

22     limitations into these claims that were claimed in

23     other patents.

24                 And one example of that is, as I mentioned         10:05:05

25     in the beginning, that there are two patents in this
```

1  file history of the family of the '480 patent; the

2  '136 patent is expressly claiming arithmetic

3  compression.  And the '258 patent is also expressly

4  claiming specific aspects of arithmetic compression

5  and create these records.

6          So none of these particular ways of creating    10:05:31

7  these records should be in this patent.  This patent

8  is really directed to source filtering, the '224

9  patent, source filtering based on the source address,

10 the logical address.

11         If we can move to slide 43.  And I was    10:05:47

12 referring to, also, how the claims in this patent are

13 sort of organized.  We're looking at the limitation of

14 looking up is in Claim 3, an independent claim.  And

15 Claims 4 and 5 depend off of Claim 3.  And these go

16 more into -- these claim more detail into what is

17 looking up.

18         And looking up is further defined as also    10:06:16

19 looking up index values for determined arithmetic

20 operations on those values and then accessing a record

21 for retrieving the source filtering information.

22         So these are limitations that are already    10:06:32

23 claimed as dependent limitations, so it's not proper

24 to put them in as limitations in the independent

25 claim.

1                      And if we look at what does it mean to look          10:06:51

2        up, the patent does describe looking up things in

3        tables using the address as a key.  And for example,

4        column 23, lines 9 through 12 in the '906 patent talks

5        about looking up and accessing records.  There's no

6        mention of retrieving.  So looking up is a fairly

7        common term in database operation and does not require

8        any additional operations of retrieving.

9                      Additionally, there are embodiments that the        10:07:24

10       defendants are trying to say, well, they have

11       compression.  We don't believe they do.  Embodiments,

12       Figures 1 through 3, don't refer to compression as an

13       absolute necessary for preparing the tables that store

14       the information.  And those embodiments, in Figures 2

15       and 3 specifically, the tables are created by

16       combining.  Other embodiments after Figure 4 and 5

17       talk about compression and those are specific

18       embodiments that go into the very details in how to

19       create tables.

20                      And as I said, Your Honor, other patents are       10:08:06

21       directed more to claims on those and the '224 patent

22       is general and broad covering source filtering

23       information.

24                      And that's all I have unless you have any          10:08:16

25       questions.

```
 1              THE COURT:  Okay.  No, thank you.          10:08:18

 2         Response.                                       10:08:20

 3              MR. YOCHES:  We have a little bit of a      10:08:49

 4    disconnect here, because we actually think that the

 5    terms at issue which are various forms of the word

 6    "associate" are really in several terms here.  I'm

 7    going to address them all, which includes the terms

 8    that plaintiff referred to because it's the same

 9    argument.

10              As an outset, there's not a dispute on      10:09:08

11    whether looking up has to be equal to retrieving or

12    not.  We thought retrieving was clear.  It doesn't

13    make a bit of difference whether you call it looking

14    up or retrieving.  We don't see a difference.  So if

15    that is a problem, we will just get rid of that and

16    just focus on the issue of what it means to associate.

17              And what we're talking about in this        10:09:35

18    particular issue of associate is associating the

19    addresses, whether it's the source logical address or

20    the destination logical address, with the instructions

21    of what to do with that address.

22              So as plaintiff pointed out in their initial 10:09:51

23    discussion, there is a big switch there.  The switch

24    receives messages that have an address.  And you need

25    to find out, based on that address, what to do.  Do I
```

1  send it out on this port, do I send it out on this

2  port?  And that's called source filtering information

3  or destination filtering information.

4          The important thing to remember -- next                    10:10:15

5  slide -- is that the patent only talks about one way

6  of doing this.  It is, I believe, incorrect, nor did I

7  hear any citations in the record which suggest that

8  there is a way to do this association other than with

9  arithmetic code compression.  It may well mean that

10 there are different ways of doing a code compression,

11 I don't have a problem with that.  Indeed it's hard to

12 claim that we're limiting, by our definition, the

13 claims to a specific embodiment when they themselves

14 agree that the term "arithmetic code compression"

15 covers several different embodiments.

16          So we don't mean to say a specific type of               10:10:52

17 code compression is what's limited, what's meant by

18 the term "associated," it can be any one of those that

19 are in the patent.

20          But we do believe that the patent very                   10:11:02

21 clearly requires the intrinsic evidence that this

22 association, the relationship between the addresses

23 coming in and the table in which the directions are

24 stored has to be something very specific, because,

25 again, that's what this inventor told the public, told

1    the Patent Office his invention was.

2              And I'll back up just a bit before I get          10:11:25

3    there.  And the important thing about this code

4    compression was it was reversible.  And the reason

5    that was important is because that saves space.  In

6    other words, you could compress this address into a

7    smaller size, you could then -- when you were using

8    it, you could then expand it to use it as an index

9    under the table, but you didn't have to store the

10   expanded address, you could store the smaller

11   compressed address.

12             So it was reversible in the sense that even       10:11:58

13   after you compressed it you could get the original

14   address back.

15             And that if you look on column 21, lines 41       10:12:04

16   through 46 of the patent, as explained in one of the

17   detail.

18             Now, let me actually mention something here,      10:12:11

19   which is key.  It was something I forgot to mention

20   earlier but it applies here as well.  There is some

21   sort of a belief that we don't have to look at part of

22   the '224 patent because they're only referring to

23   claims -- or columns 1 through 20 and that we could

24   ignore the later columns because those were added in

25   the continuation part.  There's no authority for doing

1    that.  The patent that they're relying upon concludes

2    both the original information and the later

3    information and cannot, after a patent issues, tell

4    the public they could ignore half of that patent.  So

5    let's look at the entire patent, all the columns of

6    the patent.

7            The second issue is, let's take a look at        10:12:54

8    what was done in the continuation part.  Because the

9    representation was made that when they filed the

10    continuation part that what was originally the

11    invention back in the 1980s is now not the invention.

12   But they didn't change the patent to explain that.

13   They're doing it now in 2009.

14           But I'm going to take you through the          10:13:16

15   representations that were made about the invention

16   that were made in the original patent and were kept.

17   And if they were indeed intending to change what the

18   invention was, then they should have changed the

19   representations to what the invention was in the

20   specification.

21           So the issue here is what do we mean by the    10:13:35

22   term "associated"?  Well, you've got your source, a

23   table with stored information here, that has filtering

24   information associated with the logical address.

25           Well, the patent explains that there are       10:13:53

1  other ways of doing that.  There is traditional ways

2  of doing that.  You could have a sorted table which

3  means like your telephone book that's table sorted

4  alphabetically.  You could have a tree structure which

5  means that kinda of finding something in a family

6  tree, you go in through the ancestor and then you go

7  down and find them.

8         Something called hashing.  Hashing is an          10:14:14

9  interesting thing here.  But you have compression.

10  For example, Your Honor, if you wanted to take the

11  people in the work for the Eastern District of Texas

12  and organize them by telephone numbers and the

13  question is how do I do this because there's a

14  ten-digit telephone number and that would mean I would

15  have this enormous table, you could take a form of

16  hashing.  One idea of hashing is, well, let's just pay

17  attention to the last four numbers.  What that means

18  is you may have duplicates.  So you're going to have a

19  table with some duplicates, but instead of looking

20  through a hundred people you may only have to go

21  through two or three, that's another way of

22  compression.

23         The problem with hashing, next slide, that's     10:14:53

24  mentioned is that it's inefficient.  As the inventor

25  pointed out, the problem with hashing is that it

1  requires about 40 percent more space than you really

2  need to.

3        And so he came up with his idea, which is        10:15:11

4  you not only do the compression but you do it

5  reversible.  So again, I can save space, because when

6  I have to use it I'll go back, I'll unfold it, go back

7  to the original sides.

8        And again, next slide, when you take a look        10:15:27

9  at what this patent says, it says the present

10 invention employs a reversible arithmetic code

11 compression technique to reduce the logical network

12 address.  Again, defining the invention, not just an

13 embodiment.

14       Next slide.  Another aspect of the        10:15:47

15 invention, and again it talks about you're

16 implementing the routing table using arithmetic

17 coding, again defining the invention.

18       Next slide.  And then when you go to the        10:15:58

19 explanation at column 11 which explains how can we

20 implement this invention with logical addresses, the

21 inventor explains the approach is made possible by

22 employing an arithmetic code compression technique.

23       So he has equated his invention, in other        10:16:18

24 words, the sine qua non of his invention is being able

25 to use this arithmetic code compression technique that

1   saves all this space.  They don't deny that.

2                   THE COURT:  Okay.  Let me stop you          10:16:29

3   there.  Okay.  Give me just a quick sketch of this

4   patent family.  It starts out with what?

5                   MR. YOCHES:  It's a very complicated         10:16:47

6   family.  What happened was there was an original

7   application filed, I think 19 --

8                   THE COURT:  You don't have to give me        10:16:58

9   the whole thing, but, you know, the main patent family

10  structure you're talking about here, kind of what does

11  it start at?

12                  MR. YOCHES:  It's a more complicated         10:17:12

13  question than I think you realize.  If you look at the

14  face of the '224 patent, which I think you have up

15  there --

16                  THE COURT:  The fact that I've stumped       10:17:27

17  you with that question shows you what I'm up against.

18                  MR. YOCHES:  I'm going to answer your        10:17:33

19  question and then suggest to you why I'm not sure it

20  matters.

21                  But essentially the patent which we call the 10:17:37

22  '480 patent was the first one that issued and that was

23  filed in 1989, there was then another application

24  filed that was a continuation in part meaning some

25  stuff was added.  And the '224 is what issued off of

1   that one.  So that's one branch.

2          There were then a number of other                10:17:58

3   applications that are continuations and continuations

4   in part, if you will, on a different branch of the

5   family tree that ultimately issues the '906 patent.

6          THE COURT:  What I get the general, I            10:18:11

7   guess, thrust of the plaintiff's argument related to

8   this patent family is, there was the '480 parent

9   application filed.  It disclosed whatever it

10  disclosed.  And then as I think Ms. Quinn said

11  earlier, then there were various inventive concept

12  variations off that over the years.  And this has to

13  do -- what we're talking about the '224 patent deals

14  with source filter.

15         And I'm -- it seems to me what you're saying     10:18:45

16  is, is that I don't understand what -- how we arrived

17  at the '224.  It's like you keep coming back to, well,

18  the present invention is this, this is all they

19  invented, this is all the plaintiff invented, it's

20  arithmetic coding, period.

21         And my question is, what -- what is all this     10:19:07

22  patent family dealing with?  What are the inventive

23  concepts?  There's got to be something here.

24         MR. YOCHES:  I understand your                   10:19:18

25  question, so let me address that.

1            Source filtering was in the original                10:19:20

2   application.  The additional stuff that was added

3   didn't change source filtering.  So the source

4   filtering we're talking about was in the original

5   application.  There was some stuff added.  It was

6   other ways of doing arithmetic coding.

7            So we're not -- the claim that we're talking         10:19:35

8   about encompasses those other ways.  They are

9   variations on a theme.  So we're not -- on source

10  filtering, the specific thing on this patent, that's

11  in the original application.

12           And what you do, just to explain it, is if           10:19:49

13  you want to make a continuation in part and change

14  your invention, then you go back and you change these

15  statements saying what your invention is.  But they

16  didn't, indicating that it's still the same basic

17  invention.

18           But here's some more details, the equivalent         10:20:04

19  would be this:  If I had invented -- and maybe make it

20  more specific.  If the people that were at Apple had

21  gotten a patent on their original computer, their

22  personal computer, laptop computer or personal

23  computer, and they later made modifications of that

24  computer, they made it smaller, made it faster, but

25  they went back and were trying to claim the original

1  basic broad idea, then they've still got -- they're

2  still limited by their invention, unless they want to

3  change that and say, no, I'm only going to claim the

4  little piece that I added.

5         But they essentially in their original                10:20:50

6  patent application, they had source filtering in

7  there.

8         Now, you're allowed to do that.  You're           10:20:54

9  allowed to disclose in one patent several different

10  inventions and claim them in different claims.  But

11  what you're not allowed to do is add other stuff and

12  then go back to your original application, try and

13  claim something that is based on that original

14  application and pretend that the statements that you

15  made didn't make a difference.

16         Because what you heard Mr. Govett say is,       10:21:23

17  listen, everything that is in these claims is

18  supported by the original application.  That's why you

19  could ignore the second 20 claims -- second 20

20  columns.  He told you that you could ignore everything

21  after the original disclosure in column 20 because

22  these claims are fully supported by what was disclosed

23  originally.

24         So this may be a continuation in part, but      10:21:48

25  it's not to an invention different from what was

1    disclosed.

2                      THE COURT:  Okay.  Let me ask this,          10:21:57

3    also, what about the issue that the plaintiff brings

4    up regarding the fact that this arithmetic coding

5    you're talking about is discussed in -- it's discussed

6    specifically in other claims that are not, I guess,

7    asserted here, dependent Claim 4, 6, 5, why is it

8    necessary to have arithmetic coding expressed here

9    related to Claim 3?

10                     MR. YOCHES:  The reason is simply          10:22:34

11   this -- and we've got some cases that are in our

12   brief, Your Honor, and we'll discuss later on.

13          What you're not allowed to do is stick --           10:22:42

14   for example, if you're only entitled to claim

15   arithmetic coding, you're not allowed to stick

16   arithmetic coding in one claim and therefore claim --

17   and therefore argue that your other claims that don't

18   have arithmetic coding are broader than that.  You're

19   either entitled to something broader than that or not.

20          And if we can go to one of those cases here,        10:23:02

21   this is a good example, the Decisioning case.  So what

22   happened on the Decisioning case is what does the term

23   "remote interface" mean?  Remote interface is a broad

24   term.  The inventors tried to add that in to say,

25   well, listen, this is broader than what I've

1    disclosed.

2              And the Federal Circuit says, well, if you          10:23:20

3    look at the whole specification, you see that remote

4    interface can't include and consume their own personal

5    computer.

6              Now, if you were to ask somebody on the             10:23:30

7    street could a personal computer be a remote

8    interface, the answer is yes.  Even though -- even if

9    they later on tried to add in a claim to everything

10   else other than remote -- a consumer-owned personal

11   computer, you're not allowed to broaden your claims

12   beyond what you've told everybody your invention is.

13             And so the fact of the matter that they have       10:23:54

14   some other claims which have a bunch of other

15   limitations and also have the arithmetic coding

16   doesn't mean that they're allowed now in these claims

17   to a claim broader than that.  All we're doing, if you

18   want to do that, is moving the fight to an invalidity

19   fight of whether or not their claims are supported by

20   the specification.

21             But this specification unambiguously ties          10:24:14

22   its solution to the problem to this reversible error

23   of arithmetic coding.

24             And indeed, if we can go back to slide 22, I       10:24:26

25   mean, a proposal I would make here, because in going

1    over this last night, it may be a little bit confusing

2    to have the limitations other than traditional

3    hashing.  From hashing, what makes it distinct is it's

4    reversible, so get rid of distinct hashing and add

5    reversible for arithmetic compression.  And that's

6    what allows the invention.

7            They did not invent source code filtering.    10:25:08

8    Give you a prosecution history.  They don't claim to

9    have invented source code filtering -- source address

10   filtering, excuse me.  What they invented was making

11   it practical by means of this arithmetic code

12   compression.

13           And when you do that, as the cases say, when    10:25:26

14   you say that's the important part of your invention,

15   when you say that's what distinguishes your invention

16   over everything else, you're not allowed to claim

17   broader than that.

18           And they specifically disclosed -- they    10:25:43

19   specifically disclosed other ways of doing this

20   association that they say wouldn't work.  But their

21   claim construction would encompass these.  So the

22   claim construction they're urging on this Court would

23   encompass all these associations that according to

24   them would not work.

25           I refer Your Honor, also, to column 18 of    10:26:14

1    the '224 patent, which I can just read into the

2    record, it's one sentence, lines 7 through 9 which

3    says, the routing switch design in 38896 shown in

4    Figures 2 and 3 are specific implementations of the

5    novel arithmetic compression process employed by this

6    invention.

7            The reason I bring up is because of the    10:26:38

8    argument that was made by plaintiff that Figures 2 and

9    3 don't show arithmetic compression when the patent

10   itself says that those are examples of arithmetic

11   compression.

12           So that's all they've disclosed.  They've    10:26:51

13   indicated that it's an important part of the

14   invention.  Next slide, next one, next one, next one.

15   They've indicated that it is in fact the key, it's

16   what makes this thing possible, this whole technique

17   possible, you're not allowed to claim broader than

18   that.

19               THE COURT:  Is that it?                 10:27:18

20               MR. YOCHES:  Yes.                       10:27:20

21               THE COURT:  Okay.  What will be the     10:27:21

22   next term?  Let me ask, does plaintiff have any

23   response?

24               MR. GOVETT:  I can answer your question  10:27:29

25   on the disclosure, Your Honor, if that's all right

1    with you?

2           And I'm really familiar with these patents.    10:27:33

3    We've got it here on the slides.  If you look at slide

4    3 in our book, Your Honor, you asked the question

5    about tell me about the patent family.  The question

6    is answered in slide 3 and slide 5.  There's two

7    chains which they both start at the '480 patent.  The

8    '480 patent is the original patent, that's the

9    original disclosure from June of '89, and then you

10   have one chain, as we see here in slide 3, that goes

11   to the '224 patent.

12          And if you look right there where it says    10:28:14

13   63, the related U.S. Application Data, it's a

14   continuation of serial number 737147 filed July 29,

15   1991.  All right.  And then that was abandoned.

16   Compare that to slide 5, which is on the '906.

17          What happened was, is you had the filing    10:28:38

18   right here, the 737147 filing.  The '224 patent flowed

19   from that.  And also if you look also on the related

20   US Application Data, the third line up on slide 5 from

21   the '480, you'll see that a continuation in part of

22   application 737147 filed July 29, 1991.  That's the

23   same filing.

24          So the '224 came out of that, as did the    10:29:07

25   '258, the '136, the '670 and the '906.  So I hope that

1    answers the question.

2            But as you said, of course, and as they've    10:29:19

3    admitted, the source filtering in the '224, that's

4    part of the original disclosure.  So they just worked

5    off of that and they did the '224 and then they did

6    the '258, '136, the '670 and the '906.  And, of

7    course, just like in the last case, the '670,

8    everybody admitted we're talking about the original

9    disclosure as we are here.

10            And Ms. Quinn is going to have to address    10:29:44

11    the other issue.

12                THE COURT:  Thank you.    10:29:50

13                MS. QUINN:  Yes, Your Honor, I believe    10:29:57

14    Mr. Govett explained a lot of what this patent history

15    does.  And to respond to a comment about this is a

16    continuation in part, you can't file a patent

17    application with new stuff and call it a continuation.

18    You have to call it a continuation in part.  You can't

19    describe further your invention, you have to claim all

20    of the particulars of the new stuff.

21            And what we have here is in '224, and it's    10:30:21

22    supported by the arguments that the applicant made by

23    the prosecution on Exhibit F in defendant's brief,

24    page 7 which corresponds to the arguments that relate

25    to claims at issue here, Claim 3 and Claim 8, those

1    arguments were based solely on source filtering

2    information.  There's nothing in those arguments

3    trying to overcome prior art or any other art of

4    record based on anything else concerning records or

5    arithmetic coding or any of that.  And this is an

6    appeal brief, as Mr. Govett just reminded me of, and

7    that's what the Patent Office looked at to determine

8    whether the patents -- whether the claims were

9    patentable or not.

10            And they went through a few terms,                    10:31:13

11    associated terms.  And we were looking at Claim 3

12    originally when I got up the first time, the "looking

13    up" term appears in Claim 3.  The other terms they

14    went through are what we call the associated terms or

15    association with terms.  Those terms appear in claims

16    of the '906 patent.

17            And I didn't get a chance to address those.           10:31:38

18    And I just briefly want to respond that associated

19    with -- what they're trying to do is to hang on to

20    this term "associated with."  All of this other stuff

21    about compression and coding, there's no word in these

22    claims on which we can hang such a heavy limitation.

23    And as we've already said, it's an additional

24    inventive concept that's described in the patents and

25    the claims don't go to that concept.

1          And in the brief we've provided various        10:32:07

2   cites in which the word "associated with" is not

3   described as being a particular association.  They're

4   trying to put this into the claims using this word and

5   we don't think that's proper.  The word has a plain

6   meaning, associated is having a relationship with.

7   The address is having an association to the user.

8          The MAC address is the physical address that    10:32:30

9   has an association with a hardware.  There is no

10  specific way of associating these things as far as the

11  claim should be concerned.

12         And what are the main arguments we would say    10:32:43

13  is, specification describes this coding is a further

14  part of the invention.  They show you a slide in which

15  they quote part of the specification, but they say

16  further arithmetic coding is used here.

17         But if you look at that, it's column 22,        10:33:00

18  lines 15 through 46, the first paragraph there starts

19  referring to the novel system allowing entities having

20  a universal identification number to communicate with

21  each other.  And that's the first paragraph.

22         And then it says, "Further reversible           10:33:18

23  arithmetic coding compressions are used to reduce the

24  size of the network address index."  So these are two

25  different concepts.  And we submit, Your Honor, the

1    '224 patent goes to source filtering, the '906 patent

2    goes to filtering and also to forwarding and blocking

3    ports from forwarding based on the source address and

4    the MAC address and has nothing to do with arithmetic

5    coding.  Those are limitations of other claims and

6    other patents.

7                    THE COURT:  Okay.  Thank you.                    10:33:51

8                    MR. YOCHES:  Your Honor, could I                 10:33:53

9    address that briefly?

10                   THE COURT:  Just briefly.  You can do            10:33:56

11   it from right there.

12                   MR. YOCHES:  Okay.  Thank you, Your              10:33:59

13   Honor.  If you take a look -- Your Honor, do you have

14   the '224 patent?

15                   THE COURT:  Yes.                                 10:34:04

16                   MR. YOCHES:  -- and look at the part             10:34:04

17   we're talking about here starting on column 21.  And I

18   think the representation was made, is everything after

19   line 40 was added in this continuation in part.  Okay.

20   And look what it starts off, "Further reversible

21   arithmetic coding compression techniques are used to

22   reduce the size of the network address."

23           And then if you follow it, and we're not                10:34:31

24   going to do it now, I think, everything that's

25   described hereafter are other ways of doing reversible

1    arithmetic code compression.  They're shown in Figures

2    5 through 9, and if you look at the figures there's

3    some other flow diagrams here.

4            But all they're describing is other ways to    10:34:50

5    do this same arithmetic code compression that is used

6    for the source filtering.

7            If you look at the original disclosure, and    10:35:01

8    I think -- can we put up the -- my presentation -- and

9    specifically 26, the original application disclosed

10   reversible arithmetic code compression.  So they

11   didn't -- that was part of the original invention.

12           What they added were other ways of doing    10:35:40

13   reversible arithmetic code compression.

14           We don't deny that they're entitled to claim    10:35:48

15   covers for all those different ways of doing

16   reversible arithmetic code compression, we're not

17   trying to limit the claims to a specific method of

18   reversible arithmetic code compression.

19           But in the original application, 1989, they    10:36:03

20   said here's what our invention is, it's key.  And when

21   they filed the continuation in part they said, and

22   here's some other ways to do that.  So they didn't

23   change the basics of their invention, all they changed

24   were giving some more details of how to implement it.

25                THE COURT:  All right.  What will be    10:36:22

1  the next term the plaintiff would like to address?

2            MS. QUINN:  Well, Your Honor, I believe        10:36:27

3  the physical address terms would be next, but I think

4  we've agreed that the plaintiff's construction stands.

5         So the next term will be MAC address term.        10:36:36

6            THE COURT:  Would be what term?                 10:36:40

7            MR. YOCHES:  That's true, Your Honor.           10:36:43

8  In light of their brief filed on Monday clarifying

9  matters, we can accept their constructions on anything

10  related to the physical media.

11            THE COURT:  So we have an agreement on          10:36:52

12  physical media, a physical media address, and a

13  physical media address by identifying the physical

14  device for routing the data packet in physical media?

15            MS. QUINN:  That's correct.                     10:37:06

16            THE COURT:  Okay.  And I know we had            10:37:06

17  agreement on physical media.  Do we have -- have y'all

18  filed those agreements with the Court?

19            MS. QUINN:  Yes, Your Honor, they're           10:37:17

20  part of the joint charts.  The term appears agreed.

21  And in the defendant's revised brief they stated their

22  agreement.

23         Just for the record, the construction that       10:37:28

24  defendants have agreed with is plaintiff's

25  construction, physical media address and the phrase

1    physical media address.

2                    THE COURT:  Is that correct,                    10:37:39

3    Mr. Yoches?

4                    MR. YOCHES:  Yes, that's true.                  10:37:42

5                    THE COURT:  Okay.  So the next term            10:37:43

6    will be what?

7                    MS. QUINN:  MAC address from '906.  And        10:37:46

8    that would leave, for the end, means plus function.

9                    THE COURT:  All right.  Well, then             10:37:51

10   let's take a break, about 15 minutes, resume here

11   about five till eleven.  And at that point we'll take

12   up the MAC address term in the '906 patent.  So we'll

13   recess until then.

14                    (Recess.)                                     10:38:04

15                    THE COURT:  All right.  Let's take up         10:58:43

16   the term "MAC address."  But let me ask a question of

17   the parties, maybe a couple questions regarding some

18   of the terms that have been addressed here previously

19   this morning.

20                    The first would relate to the "logical       10:58:59

21   address" term.  One thing I'm unclear on is this issue

22   related to internal structure.  It seemed like both

23   parties were in agreement, I suppose, that the system

24   we're talking about here does not rely on structure,

25   the internal structure of the address to process -- to

1  process it.  Would that be correct?  I know that's the

2  plaintiff's argument.

3        Defendants, would there be an agreement on          11:00:11

4  the defendant's behalf that the system we're talking

5  about here doesn't use this structure, internal

6  structure to process the information?

7        MR. YOCHES:  That's correct, Your          11:00:22

8  Honor.

9        THE COURT:  With that agreement, I          11:00:23

10 mean, is there some -- and secondarily, I'm not sure

11 that the parties dispute the idea that these addresses

12 could have, I guess, what's termed "internal

13 structure"; would that be correct, Mr. Govett?

14        MR. GOVETT:  That's correct.          11:00:42

15        THE COURT:  Mr. Yoches, would that be          11:00:43

16 the defendant's position?

17        MR. YOCHES:  Well, yeah, but I'm afraid  11:00:47

18 there's confusion here.  If you're talking about

19 internal structure in this environment, that's true,

20 it doesn't have it, it has no internal structure.

21        Their point was, I believe, you could choose  11:01:02

22 something which had an internal structure for a

23 different -- like a telephone network, so it does have

24 an internal structure for the telephone network.  But

25 when you use it as an address, there's no internal

1  structure because there's no area code part, there's

2  no exchange part.

3          So I would say that the same number as an          11:01:22

4  internal structure in the phone system and doesn't

5  have an internal structure on the internet.

6          THE COURT:  Well, and that kind of goes          11:01:30

7  to what my question is, whether there's a way to

8  structure the -- to construe this term that

9  communicates that the structure is not used in this

10  system, to not say it doesn't -- it may or it may not,

11  but as it relates to this system here it's not being

12  used.

13          MR. YOCHES:  That's the reason that the          11:01:59

14  words we use which were taken in the patent says no

15  internal structure to suggest the network connection

16  location.

17          So, you know, it may have an area code, but          11:02:08

18  that doesn't suggest the network connection location.

19  You may want to use, oh, I don't know, your actual

20  physical address and have a series of numbers, but

21  that doesn't tell your actual network connection

22  location.  So that's why the term "internal structure"

23  in our proposed construction is modified that way.

24          THE COURT:  Okay.  Well, that clarifies          11:02:29

25  that a little bit.

```
 1                    Mr. Govett, what would be -- now, one thing   11:02:32

 2    I'm wondering whether there's some bridging of the

 3    gap, that if that's what they're trying to communicate

 4    and you seem to be, at least to some degree, in

 5    agreement that that is what's going on here, maybe

 6    there's some language that you can accept to

 7    communicate that.

 8                    MR. GOVETT:  Or that they can accept,   11:02:55

 9    Your Honor.

10                    The problem is they're proffering a   11:02:57

11    construction for a different term and saying no

12    internal structure.  You can't do that in light of

13    this -- in light of what we've got here in the patent.

14                    What you're saying and what's been agreed   11:03:10

15    that it's processed -- is our construction, it's

16    processed without regard for the physical location and

17    connection.  That's it.  That's we're talking about

18    here, structure independent.

19                    And that's why going back to column, I think   11:03:23

20    it's 11 and 21, I cited these in the two pages that I

21    cited to the Court, and that's why those are so

22    important.  It's treating without predetermined

23    internal structure and processing as a unique ID code.

24    That's exactly --

25                    I mean, really, what we tried to do is take   11:03:46
```

1    that language and put it into the construction

2    processed without regard for the physical location.

3            Columns 11 and 21 are pretty much what's     11:03:59

4    described there, we thought in line with our

5    alternative proposed construction.

6                    THE COURT:  Okay.  Tell me where that     11:04:10

7    is again.

8                    MR. GOVETT:  Yes, Your Honor.  It's on     11:04:12

9    this two-page sheet.  It's really column 11.  Well,

10   it's all of them on the two pages.  But the ones that

11   kind of bring it altogether are the column 11, lines 1

12   through 9:  The novel system of the present invention

13   modifies Figure 1 to provide an internet routing table

14   that uses a flat logical address structure to provide

15   fast and efficient route processing of both multicast

16   and unicast message traffic.  In the present system,

17   the physical address structure is removed from the

18   design and operation of internet routing by treating

19   the message addresses as a symbol string without

20   predetermined internal structure and processing them

21   as if they are a unique code.

22           So it treats it and processes it just as a     11:04:56

23   unique code.  And that's -- when we talk about without

24   regard for the physical location, that's what we're

25   saying, it's the same thing.  And column 21 is the

```
 1  same point right there at the bottom.

 2              THE COURT:  Well, let me ask this:       11:05:18

 3  Tell me what the difference is between the defendant's

 4  no internal structure to suggest network connection

 5  location and your without regard for the physical

 6  location of the connection.

 7              MR. GOVETT:  They're saying no            11:05:34

 8  structure, which is at odds with all these disclosures

 9  in the patent on these two pages.

10              THE COURT:  Now, what they're saying      11:05:41

11  is, has no internal structure to suggest network

12  connection location.

13              MR. GOVETT:  That's what they're          11:05:50

14  saying, that's not what's written here.  You either

15  have structure -- you can have structure or you don't.

16  The patent talks about treating it and processing it,

17  that's the difference.

18              THE COURT:  So you're saying there's no   11:05:57

19  -- when they say no internal structure to suggest,

20  they're saying no internal structure.

21              MR. GOVETT:  Exactly.                     11:06:04

22              THE COURT:  Well, let me ask this:        11:06:04

23  What -- I guess I know your answer.  You're saying

24  that the definition or the way this term "logical

25  address" should be construed is tied up in how it's
```

1    processed.

2        Now, initially you had suggested an address    11:06:22

3    assigned in the computer network.  Go ahead, tell me

4    why.

5        MR. GOVETT:  Because it's supported.    11:06:31

6    Because the logical address is supported.

7        When you look through the discussion in    11:06:35

8    specification about logical address, that is

9    supported.  But we don't have any difficulty in moving

10   closer, and so that's this discussion.  We don't have

11   any difficulty in moving closer to them.

12       And in terms of logical address, we think    11:06:48

13   that's fine, particularly in light of what the Court

14   has done previously.

15       But IP address and the contents of the '670,    11:06:53

16   mobile IP is completely different stuff than we're

17   talking about here, and that's why the unchanging is

18   not proper.  In mobile IP, it doesn't change during

19   the connection.

20       See, what they want to do with the    11:07:07

21   unchanging, and I want to talk about this, too, while

22   we're on it, is they want to say, well, unchanging for

23   all time, it never changes.  And that's not the case.

24       I mean, the interest rate could change from    11:07:16

25   one year to the next on a credit card, it can change

 1   from credit card to credit card and so forth.  That's

 2   the analogy that was given, it's not appropriate.

 3           In this invention, it's fixed for the                    11:07:28

 4   duration of the connection.  And to say that it's

 5   unchanging opens up the argument to say, oh, for all

 6   time, which is improper because that's not at all

 7   what's disclosed here.

 8           THE COURT:  Okay.  Let me be clear.  As            11:07:44

 9   to your view of logical address --

10           MR. GOVETT:  Yes.                                          11:07:50

11           THE COURT:  -- are you saying a logical            11:07:51

12   address has structure such that -- but it's not

13   processed with regard to that structure, or it could

14   or could not?

15           MR. GOVETT:  The latter.                                  11:08:06

16           THE COURT:  Now, my other question is,             11:08:08

17   it was kind of along the lines of what we were saying

18   you propose first.  A question I had was are we

19   defining logical address as to what it is or how it's

20   used?  In other words, you could stop a fixed and

21   unique identifier of the connection to the internet

22   represented by a series of numbers.  That's your

23   alternative proposal, period.  And perhaps that

24   defines what a logical address is rather than how it's

25   used.

1          MR. GOVETT:  That's a good question.  I   11:08:41

2   think in the context of this patent it's both, because

3   there's a lot of disclosure on that that we put on

4   these two pages and brought to you.  It's a pretty big

5   disclosure, so we put them in here.

6          And it also provides the flexibility that I   11:09:01

7   talked about with the file history when I handed up

8   the file history.  My point with that was, is

9   (903)682-8282 in the phone system from this phone to

10  your home, it's treated, however you want to say it,

11  you know, they use that 903, okay, we're here, 682,

12  that's that part of town, and then the block and so

13  forth.

14         But when you go to Home Depot and you type   11:09:30

15  that in, boom, it takes the whole thing, says Judge

16  Love or Brett Govett or whoever.

17         So it can have structure.  But in the   11:09:38

18  context of this invention, it's processed without

19  regard to that.

20         I hope I'm not muddying the water.   11:09:46

21             THE COURT:  No, no, I think --   11:09:49

22             MR. GOVETT:  I'm trying to clarify.   11:09:50

23             THE COURT:  You know, I certainly still   11:09:52

24  have questions and it's not all completely clear, of

25  course.  But I think your answer is well taken.

```
 1              But let me get to the defendants on this.  I      11:09:59
 2    guess just the idea that -- I mean, what's wrong with,
 3    at least in my mind right now, defining it more as
 4    what it is rather than how it's used?  And I mean, we
 5    have an almost agreement if we stop after the phrase
 6    "series of numbers."
 7              What would be your position on that?            11:10:28
 8              MR. YOCHES:  Your Honor, we do,                 11:10:32
 9    especially since they say unchanging is redundant with
10    fixed.  So we aren't in a hundred percent agreement.
11              THE COURT:  So the defendant could             11:10:41
12    agree with a fixed, unique and leave that unchanging
13    for a minute, identifier of a connection to the
14    internet represented by a series of numbers?
15              MR. YOCHES:  Sure.                             11:10:52
16              THE COURT:  Mr. Govett?                        11:10:53
17              MR. GOVETT:  That is -- I think he was         11:10:56
18    answering the first part of your question.
19              MR. YOCHES:  Just to make sure.  And           11:11:01
20    that would be the only definition?  Oh, I'm sorry, no,
21    I thought you meant that part.
22              THE COURT:  I'm trying to get to a             11:11:06
23    final agreement here.
24              MR. YOCHES:  No.  It is important, I           11:11:08
25    think both sides agree, that what makes it a logical
```

1    address is that it doesn't indicate, it has no

2    structure that suggests where it is in this network.

3    Again, Mr. Govett's example is your telephone number,

4    when you use it at Home Depot, doesn't suggest where

5    you are or which Home Depot you're in, it doesn't do

6    that.

7            THE COURT:  Let me stop you there.          11:11:34

8    What if your definition said -- the problem,

9    obviously, is you have in there no internal structure.

10           MR. YOCHES:  To suggest.                    11:11:47

11           THE COURT:  Well, right.  But he says       11:11:47

12   when you say that, then you've said it has no

13   structure.

14           MR. YOCHES:  Then he's wrong.               11:11:54

15           THE COURT:  What if we said it has --       11:11:56

16   you know, that it's processed -- in other words, they

17   have process without regard to physical location.  You

18   have network connection location.

19           MR. YOCHES:  It doesn't make any            11:12:11

20   difference.

21           THE COURT:  Okay.  We're both getting       11:12:13

22   at that it's processed or used in such a way without

23   regard or there's no suggestion of where it's located.

24           MR. YOCHES:  Fair enough.  That's true.     11:12:26

25   The key part about it that I think we both agree on is

1  that the logical address doesn't suggest where you are

2  on the network.  It could suggest -- and I'll just be

3  honest, it could suggest location, but that's why --

4  and that's why I take offense.

5          You know, Mr. Govett is sitting there          11:12:46

6  anticipating what arguments I'm going to make.  I put

7  in the recommendation that we modify the internal

8  structure we're talking about is one that suggests the

9  internal location.  It seems to be stupid of me to

10  come before this Court later on and argue that it has

11  some internal structure that's unrelated to that.  I'm

12  committed to the kind of internal structure I'm

13  talking about.

14          THE COURT:  Well, it sounds like to me          11:13:07

15  that you agree that this address could have structure.

16          MR. YOCHES:  Yes, I agree.          11:13:13

17          THE COURT:  So Mr. Govett's problem is          11:13:14

18  it says has no internal structure.

19          Now, if you could define it in such a way          11:13:20

20  that leaves that out.

21          MR. YOCHES:  Well, that's why I thought          11:13:26

22  the next phrase is what structure we're talking about.

23          THE COURT:  Mr. Govett, why does that          11:13:32

24  structure not identify what structure he's talking

25  about, that without to suggest network location?

 1              MR. GOVETT:  It's not what the patent    11:13:42

 2   says.  You cannot find in the patent any statement

 3   that says no internal structure.  I mean, it really --

 4   we've pulled, Your Honor, it goes back to these two

 5   pages.  I hate to keep coming back to that.  But

 6   really that's what it's all about, and it's very, very

 7   clear in the disclosure.

 8              And we tried to match the disclosure.  He's    11:13:59

 9   pretty much agreed the physical location, I thought I

10   heard that, I don't want to put words in his mouth,

11   but I think what we're saying is based on the last

12   agreement is our alternative proposed construction.

13              MR. YOCHES:  Could I just point out, if    11:14:15

14   you look at column 6 of the '224 patent.

15              THE COURT:  Okay.    11:14:29

16              MR. YOCHES:  And start at line 6, it    11:14:30

17   says:  Specifically the present system provides the

18   following features, variable length addresses with no

19   known internal structure.  So the patent does say.

20              THE COURT:  Okay.  Well, let me ask    11:14:45

21   another question.  I just want to be clear that, are

22   the parties disputing whether -- is there an agreement

23   that source and destination addresses are logical

24   addresses?

25              MR. GOVETT:  Yes.    11:15:05

|   |   |   |
|---|---|---|
| 1 | THE COURT: Mr. Yoches. | 11:15:07 |

1          THE COURT:  Mr. Yoches.                    11:15:07

2          MR. YOCHES:  We believe they're logical    11:15:09

3  addresses.

4          THE COURT:  I just wanted to clarify       11:15:11

5  that.

6      Okay.  Let's move on to the MAC address        11:15:13

7  term.

8          MS. QUINN:  If you could turn to slide     11:15:26

9  68.  Your Honor, we've taken the definition for this

10 term right out of the specification.  I mean, the

11 language is clear it's a MAC address, the address

12 associated with the MAC.  The MAC is a media access

13 controller.  And the problem we have from defendant's

14 construction is it doesn't say that it is a physical

15 address, it doesn't have any relationship to a media

16 access controller, it leaves out what address we're

17 speaking about.  And identifying a host is not

18 sufficient and it's actually inaccurate.

19          We look at Figure 2 of the patent, and I'll  11:16:08

20 put it up here for you, we have several MACs that are

21 listed here.  And MACs in this situation, they're the

22 controllers and the portion of the controllers.  And

23 there's a host 40 also indicated here would be somehow

24 a processing computer that can receive information

25 from the switch.  But it's not the only hardware in

1    the claims that would have an address associated with

2    it.

3            So we believe that the defendant's                    11:16:43

4    construction is too vague, wouldn't help to understand

5    what is a MAC address, an address in association with

6    something physical, being a media access controller.

7    And it's actually incorrect.

8            And if we can turn to the next slide, we              11:17:01

9    also have a problem with -- basically in their briefs

10   they cannot be a physical address.  Well, that's what

11   a media access controller is, it's a physical device

12   network.  So it is a physical address.

13           And we had the issue of logical versus               11:17:17

14   physical, and their interpretation of this term was

15   dangerously close to what they have for the logical

16   address.  So if we're to adopt that construction, it

17   would be confusingly similar and not really identify

18   what we're referring to.

19           And embodiments that are described in the            11:17:37

20   specification don't say conclusively and unambiguously

21   that the MAC address never changes.  So the idea that

22   you can have an unchanging MAC address is actually not

23   supportive of the specification.

24           In the highlighted section here, as we said,         11:17:56

25   you know, the broad scope of the '906 and the '224

1  cover both embodiments, one in the internet or in

2  mobile system.  You have mobile end-systems can keep

3  the same network identification code, not physical

4  address.  Because when you move from network to

5  network you may switch from using an Ethernet port and

6  you may switch to using a WiFi port, and that's a

7  different address.

8         And that is not the address that we're          11:18:20

9  referring to in these claims as being uniquely

10  identified anyway.  The addresses that uniquely

11  identified are referring to the logical address that

12  we just finished discussing and that's why we believe

13  our construction is more supported by the

14  specification.

15         THE COURT:  Okay.  Thank you.                    11:18:36

16  Response.

17         MR. YOCHES:  If we weren't explicit              11:19:10

18  before, I'll be explicit now.  MAC address in the

19  context of the claim we're talking about has to be a

20  logical address.

21         Let's take a look at Claim 9.  Claim 9 is        11:19:18

22  essentially also something that refers to the source

23  address filtering and destination address filtering.

24  And it says essentially, as was described, but I'll

25  summarize it, when you receive this address, you look

1  to see do I have instruction, is there a match.  If I

2  have instructions, I follow the instructions.  If I

3  don't have instructions, I do some stuff so I can

4  figure out what to do.  Same thing with the

5  destination address.

6         And the process that's discussed in this                11:19:58

7  claim only takes place with logical addresses.  The

8  routing only takes place with logical addresses.

9         And what the patent discloses, if you go to             11:20:09

10 the next slide, is that when you're choosing this

11 address, just like the example that was given with

12 Home Depot, that you could use your telephone number

13 as your personal identification address, one of the

14 things you can choose to be this fixed and unchanging

15 number is a MAC number.  It's the number if you buy a

16 piece of equipment, Your Honor, you see next to the

17 serial number, it's a very long number.  And that can

18 be your fixed and unchanging number, but it's still a

19 logical address.  Even though it may be a physical

20 address for purposes of tracking a particular device

21 or something like this, in this network it is a

22 logical address.

23        And the reason it can't be a physical                   11:20:58

24 address -- and I'll refer you, Your Honor, I don't

25 have a slide on this, but again, if you don't mind

1   looking at the patent here, the '906 patent in this

2   case, column 17, line 10, it says -- it's describing

3   how this thing operates:  The router strips off the

4   incoming physical header, when 120 is what they call

5   the MAC address.  It's stripped off.  It cannot be

6   used for purposes of looking things up.

7          And so contrary to what you just heard,                11:21:41

8   there is not a single embodiment in this patent, nor

9   can they point to one nor have they shown you one of

10  using a physical address as part of this routing

11  means, as part of this source code filtering.  It just

12  doesn't exist.

13         And so the question is, what then is meant            11:22:00

14  by the one quote that they had here, which was from

15  column 11, line 66 through column 12, line 3, where it

16  says:  The mobile end-systems can keep the same

17  network identification code.

18         That means that they have a fixed and                 11:22:20

19  unchanging address, which is a logical address, not a

20  physical address.  And that's all that means.

21         And so the term "MAC address" is never                11:22:33

22  defined.  A MAC is defined and there is a number that

23  is associated with MAC that you can use as a logical

24  address.

25         What I refer the Court to, if you can go to           11:22:41

1    slide 20, the next one, there you go, this is from the

2    prosecution history in the '906 patent.  And just to

3    give Your Honor some background in this, the '906

4    patent was one that just recently issued.  And in that

5    -- in the prosecution of that patent, the Patent

6    Office says, well, listen, we think that this -- these

7    claims are what's called obvious over the claims of

8    the '480, and they issue what's called an

9    obviousness-type double patenting rejection, which

10   essentially says I'm not going to allow you to have

11   these claims and extend your patent monopoly beyond

12   the length of the '480 patent in this case, which was

13   the very first patent that issued.

14            And what the Patent Office understood these        11:23:48

15   claims to be is as follows:  They said it is well

16   known skill in the art that the unique, fixed and

17   unchangeable code identifying a device can be a MAC

18   address.

19            Well, the first part is defining a logical        11:23:59

20   address.  And the examiner said you can't -- I will

21   not let you have a claim and extend your patent

22   monopoly just by saying that that number can be a MAC

23   address.  And so the Patent Office understood this

24   claim could be a logical address.

25            The inventor and the patent owner didn't          11:24:20

1    challenge this, instead they issued what's called a

2    terminal disclaimer where they said okay, we'll make

3    sure this patent ends at the same time the '480 patent

4    does because we're not going to fight you on this

5    obviousness double patent issue.

6              So I don't think there's much question that          11:24:38

7    the MAC address is a logical address.  And that's why

8    our construction of the claim is as a logical address,

9    in this case one that's assigned to a host, a host

10   being whatever would have perhaps that MAC number.

11             THE COURT:  All right.  Thank you.  All              11:24:54

12   right.  Let's move on to the next term.

13             MS. QUINN:  So, Your Honor, I think                  11:25:45

14   we're moving into the means plus function realm with

15   our briefing here, and in particular there are four

16   terms that we're going to be discussing.

17             Claims 8 and 12 of the '224 patent are              11:25:58

18   drafted using means plus function language.  And the

19   parties agree that these four terms are means plus

20   function terms.  And we're going to take it

21   one-by-one.

22             The first one is the means for receiving --         11:26:14

23   before we move on, Claim 8 goes to the source

24   filtering of the data packets in response to the

25   source filtering information and Claim 12 goes to

1  routing the packets based on the destination address.

2  So there are two aspects of filtering and routing of

3  packets and they were going to become distinctly

4  different from each other in a minute when we discuss

5  the means plus function.

6          Next slide.  And what we have here is the          11:26:48

7  functions agreed to by the parties.  The function is

8  receiving a data packet.  So what we're trying to find

9  is what structure performs receiving a data packet.

10 And we have a fundamental disagreement on how these

11 embodiments are described in the specification.

12          And recently in their briefing they removed          11:27:10

13 the media access controllers that we had agreed on as

14 being structures that receive the data packets.  And

15 if we can refer to Figure 2, which it shows the scope

16 of what a switch is, we have -- number 38 is the area

17 that's highlighted on the screen on Figure 2, and that

18 is what's considered to be the switch part of the --

19 of what's called the media access controller switch.

20 And in some areas it discuss specification that has

21 been shorted to MAC 38, but it's really a switch.  As

22 you can see, it's got various media access controllers

23 communicating with it.

24          34, if we can click one more time.  We have          11:27:55

25 highlighted here in red what are the media access

1    controllers.  The switch is receiving information.

2    The packets from media access controllers that it has

3    and they're switching packets for.

4              And in this sense, it is described that        11:28:11

5    switch 38 receives packets through MAC 34, receives

6    them through that line 36, those are data and clock

7    lines.  So it is receiving the data packets.

8              And we agree that the media access             11:28:28

9    controllers, they're ports, they're receiving data

10   packets, and then the media access controller, switch

11   38, is processing those packets according to the

12   claim, but at a minimum that is the structure.

13             And the next slide, what we have here, just    11:28:43

14   to make that point further, if we can click again, the

15   switch is receiving the packets from each of the ports

16   and the host that is described as host 40, I believe.

17   And this MAC switch 38, but we shortened it for

18   brevity purposes, it receives packets from other

19   hosts.

20             So we think that the structure really is the   11:29:09

21   media access controller and the switch also receives

22   them because it's going to process them, but the media

23   access controllers are the structure.

24             And we disagree with defendant's proposed      11:29:20

25   structures.  There are dozens of them and they span

 1    all the figures and embodiments described including

 2    logic that is not thoroughly described.  And in

 3    particular, we take issue with citing every buffer

 4    that is identified in the patent because they're not

 5    described as being directly linked to the function.

 6            And one of the issues we have here is what      11:29:47

 7    structure necessarily performs the function, and we

 8    believe that necessarily and clearly described the

 9    media access controllers receive the data packet and

10    that's a perfect function for the means plus function

11    term here.

12            THE COURT:  Okay.  Thank you.               11:30:02

13            MR. YOCHES:  If I could suggest, Your        11:30:08

14    Honor, I think it would be easier if they did all the

15    means plus function at once and then I did all the

16    means plus function because they're interrelated.

17            THE COURT:  Would that be okay?              11:30:18

18            MS. QUINN:  We have no objection to          11:30:20

19    that.

20            THE COURT:  Okay.  Go ahead.                 11:30:21

21            MS. QUINN:  The means for looking up,        11:30:26

22    Your Honor, is the next term.  And so the claim

23    receives data packets, next is the means for looking

24    up in a directory table stored at the controller using

25    the source address source filtering information

 1   associated with the source address.

 2            This is similar to the method limitation we    11:30:44

 3   went over with respect to Claim 3 with the looking up

 4   was the method step.  This is the means for associated

 5   with the term.  And we believe -- well, first the

 6   function has been agreed by the parties, so the task

 7   here is to identify what is the structure.  And again,

 8   we have a significant number of structures the

 9   defendants have identified.

10            And we contend that the structure is simply    11:31:11

11   the source index.  The source index 74 and the source

12   protect table 78, if you can turn to the next slide,

13   what we have here described is throughout what Figure

14   2 does, what switch 38 does, receives the data packets

15   and it's processing them serially.  So it takes first

16   the addresses and then tries to put those addresses in

17   tables if they're not there already, and it describes

18   several tables.

19            There are at least three tables here that we    11:31:48

20   can tell; the source index table, the combined table

21   outputs and the source protect table.  And the claim

22   language simply says looking up in a directory table,

23   so we're looking for a table in Figure 2.

24            And we contend that the one table that does     11:32:05

25   this is the source protect table.  Because at that

1  point in time is where you have all of the

2  information, source filtering information.  That's a

3  term we've agreed on.  And that's the information

4  that's going to be used by the switch to eventually do

5  something with it.  And it goes into this table, looks

6  into it by using the source index.  Databases use

7  index to look for information in tables, and that's

8  what we believe is the correct structure for these

9  two.

10        The other tables are there to create other     11:32:38

11  tables that eventually end up in a table that we're

12  looking at, which is the one that actually contains

13  the source filtering information.

14        The next one.  The next term is means for      11:32:52

15  filtering.  And Your Honor has a copy of the slide I

16  was about to point you to, slide 54.  We've

17  highlighted there the two structures we believe

18  corresponds to the means for looking up the source

19  code information.  And we do not believe it's proper

20  to go beyond these figures.  Because this is the

21  figure that really describes source filtering.  And

22  the claim is directed to source filtering, so we're

23  looking at what embodiment performs source filtering,

24  and this is the one.  And so we have identified here

25  the structure.

1           The next slide.  The next term here is means                11:34:03

2   for filtering.  So there are three means plus function

3   terms in this claim, and this is the third one and

4   final one.  And this is the means for filtering the

5   data packet in response to the source filtering

6   information.  And the previous term looks it up and

7   this term is the means for actually filtering based on

8   that information.

9           And the specification we believe is fairly                11:34:29

10  clear and I think defendants agree that the buffer

11  routing logic is involved in this, but they also want

12  to add other structures.  We believe the buffer

13  routing logic is sufficiently and clearly identified

14  as performing this function.  It does it with the

15  information it received, which is the output of the

16  looking up, which is the record that is the protect

17  record.

18          And if we can click to the next one.  That's                11:34:57

19  the buffered routing logic.  And in this Figure 2 if

20  you can see there are two sides, two columns.  The

21  left-side column of all the structures that follow in

22  parallel with the destination, sources happening in

23  destination is happening side by side.

24          And so the left-hand side, source protect                11:35:19

25  record 80, is the one that performs the source

1   filtering.

2            And now we're going to jump to Claim 12, we   11:35:26

3   talked about destination.  Remember I said that Figure

4   8 -- Claim 8 goes to source and Claim 12 goes to

5   destination.  So we're on the structures that are on

6   the left-hand side.

7            So the source protect record is the one that   11:35:42

8   has the source filtering information.  And very simply

9   the buffered routing logic does the protection based

10  on that record.  It filters back, it's based on that

11  record.  So we believe that is the structure that is

12  associated with that term.  And there are no other

13  structures that we believe are necessary to perform

14  that function.

15           And then the last term, which is now going   11:36:05

16  to Claim 12, we're looking at the means for looking up

17  using the destination address, now we're in the side

18  of the destination.  In a routing table information

19  associated with the destination address for routing

20  the data packet for delivery to the receiver.

21           So here now we have a routing table and so   11:36:26

22  we're looking for that.  And what we find here is a

23  routing table, it's the destination routing table, as

24  the name suggests.  And that is routing index 76,

25  which is what is used to look into the routing table

1  84.  And it makes sense.

2        Next slide.  I've highlighted those for the   11:36:51

3  Court and that is slide 58.  The route index, again,

4  similar to what we just talked about with respect to

5  the source, an index is used to look into a database,

6  that's how look up are performed.  And the table that

7  is being looked into is the destination routing table.

8  And that is what is used eventually to route the

9  packet by buffer routing logic.

10        And we contend, Your Honor, that these are   11:37:25

11  the structures that are linked and necessary to

12  perform the functions, and everything else is an

13  attempt to include into these very basic claims with

14  source filtering and destination source routing that

15  limitations and other embodiments that tweak how the

16  tables are created and how the indexes are -- and keys

17  are created and not per se embodiments that deal with

18  how the filtering is performed.

19        THE COURT:  Okay.  Let me ask you a   11:38:00

20  question.  Going back to the means for looking up in a

21  directory table stored at the controller using the

22  source address source filtering information associated

23  with the source address.

24        My concern with your proposal on this one,   11:38:22

25  which I believe is Figure 2, items 74 and 78, is the

1    language that's at issue is looking up in a directory

2    table stored at the controller using the source

3    address source filtering information.

4           Now, why doesn't that language using the          11:38:50

5    source address implicate the structure necessary to

6    use to process the source address filtering

7    information?

8                  MS. QUINN:  That's a lot.                   11:39:10

9           The language is that you're using the source      11:39:13

10   address filtering information.  And the source address

11   filtering information is information that is created

12   by using the address.

13          The way the Figure 2 is described is the          11:39:27

14   addresses are received and then they're combined and

15   they're keeping track of them in a table.  With the

16   source address filtering information, that's part of

17   it.  And that is -- the index is what looks into the

18   table to go into what exactly is going to happen, do

19   we filter the packet or not.  The source index is

20   using the address that is received.

21          So we believe that the source filtering           11:39:55

22   information is related to the source address because

23   that's what is used to eventually create the index

24   that looks into the source filtering information.  So

25   they are related.

1          But the source index and the source protect          11:40:09

2   table are the ones that together work to look into and

3   find that protect record which is eventually the

4   source filtering information in its whole.

5          THE COURT:  So the source index table          11:40:29

6   68 combined table output 72 and the protect record 80,

7   why are those -- why is that structure not implicated

8   when you're talking about using the source address

9   information?

10          I guess my concern is, is that it seems like          11:40:50

11   the way you're describing it may be that the language

12   would in effect be rewritten to say looking up in a

13   directory table stored at the controller source

14   filtering information associated with the source

15   address.  In other words, what's giving effect to

16   using the source address language?

17          MS. QUINN:  The using the source          11:41:15

18   address is the source index.

19          THE COURT:  But these other things, 68,          11:41:19

20   72, 80, they are using the source address, too, aren't

21   they?

22          MS. QUINN:  Yes, but they are not what          11:41:28

23   is used to look up.  And what we're referring to here

24   is the means for looking up.  These other tables may

25   use the source address to eventually create the index

1   that is used to look up.  The means for looking up

2   cannot encompass structures that are not necessary to

3   perform the looking up function.

4                    THE COURT:  Aren't 68, 72 and 80                11:41:49

5   necessary for the looking up if you're going to write

6   it that way?

7                    MS. QUINN:  We don't believe it is,             11:41:57

8   Your Honor.  Because what's required here is that you

9   have a table that has the source filtering

10  information, which is information that's used to

11  determine whether to filter the packet or not, and

12  that information is in the store protect table.

13           So regardless of what method is used to                11:42:17

14  create that table or to make the index look for that

15  specific information, the fact is that the structure

16  using an index and a table already created to look

17  into that directory table and then find a record that

18  it needs to go through the information.

19           And the key here is that the claims are                11:42:38

20  really directed to this novel idea of using -- not

21  using the physical address and really focusing on the

22  source address, the logical source address, to make a

23  determination.

24                    THE COURT:  Okay.  Thank you.  All            11:42:51

25  right.  Response.

1          MR. YOCHES:  Just start with Figure 2.    11:43:15

2   And I modified it a little bit just to help understand

3   the claim here.

4          But what you're shown here is a switch 38    11:43:25

5   that's connecting essentially a number of networks.

6   That's what the patent discloses.  And the networks

7   are what I've added here, shown as little clouds here

8   connected to these MAC devices.  And that's what's

9   disclosed in the patent.

10          So if you look at Claim 8 now in that    11:43:40

11  context.  Claim 8 is defining a controller.  And the

12  controller is only element 38.  Because that is what

13  is -- next slide -- it is the first network which is

14  one on top there in green -- next slide -- there are

15  the other networks down here.

16          And the controller, then, 38, is what's    11:44:08

17  interconnecting those networks.

18          And so the three means elements here    11:44:12

19  logically have to be inside the controller.  It may be

20  true under the abstract that it is possible for a MAC

21  34 to receive a data packet, but it's not part of the

22  controller and that's why we suggest that the

23  corresponding structure for this means element is just

24  -- next slide -- next slide -- is just these buffers

25  here, 48 and 50, as well as essentially the lay buffer

1  52.

2            Next slide.  And so they receive the message    11:44:56

3  here, which is shown, and store above the destination

4  the source address here.

5            Now, if you want to be super technical, the    11:45:08

6  only part that actually stores the source address is

7  just the source address shift register, but I think

8  what's intended is that they're right next to each

9  other and they're stored essentially at the same time.

10           Next.  And the specification here does link    11:45:26

11  those shift registers to this function.  The

12  specification explains at column 13, lines 1 through

13  6, and then later 9 through 14, that the source

14  address shift register and then the destination

15  address shift register are how you get this -- how you

16  receive the source address information.

17           Next slide.  And so as Your Honor    11:45:54

18  appreciated, this means -- the function is, is your

19  means for looking up using the source address?  So the

20  source address is what comes out of the source address

21  shift register, so that's -- that's at one end of a

22  number of elements and the source filtering

23  information is what comes out of the source protect

24  table.  We agree with the plaintiff on that.

25           And the patent explains that the way you get    11:46:23

1   that information is, first of all, you have to process

2   the source address.  And one of the things that's done

3   here in the source index table is finding out whether

4   indeed you have information that relates to this

5   particular address and what to do if you don't and

6   then using that process information then as an index

7   to the source protect table and you do it by combining

8   -- you use combine table output 72 and all the other

9   information.

10        So in addition you have as learned address   11:46:59

11   logic which is tied to how you get the source

12   filtering information.  Because if the source address

13   is not in this table originally, you have to find a

14   different address, you have to find a different way to

15   find the information that corresponds to that.

16        So the specification, and if you look at the   11:47:20

17   '224 patent beginning at column 14, line 17, describes

18   this operation of going from the source address to the

19   source filtering information.

20        And then the specification says that if you   11:47:36

21   want to find out about this element to learn the

22   address logic, look at Figure 6, Figure 7, Figures 9

23   through 14.  So that's why that structure is included

24   in the corresponding structures, because the patent

25   links those figures to that one element at this means

1    component.

2         Next slide.  And then the last element,    11:48:00

3    which is the means for filtering, then picks up the

4    source filtering information and it filters the data,

5    the data packet in response to the source filtering

6    information.  So the source filtering information is

7    what comes out of the source protect table 78, the

8    record 80 there and the buffered routing logic, which

9    again is described at column 13, beginning at line 14,

10   describes how that source filtering information is

11   used to filter the data packet.

12        So essentially Claim 8 pretty much defines    11:48:38

13   what's in the left-hand part of Figure 2.

14        Then when you go to Claim 12 which is    11:48:48

15   talking about the means for looking up information

16   associated with the destination address using the

17   destination address, again you have the destination

18   address over there coming out of that buffer.  The

19   information that's associated with the destination

20   address is what comes out of the destination routing

21   table, and everything in between there is what you

22   need in order to get that information from the

23   destination address.

24        Now, next slide.  It turns out that we can't    11:49:19

25   stop there.  Because as the patent explains, there are

1   alternative embodiments that correspond to the claim.

2   And if you can look at column 50, line 57, Figure 3 is

3   described as an alternate embodiment.  And it has

4   different ways of doing those same functions.  It has

5   an octet register 104 and a delay buffer, which is

6   shown in blue but is not numbered, and that's how you

7   receive the data packet.

8          You've got, again, the source address coming   11:49:57

9   out of there and the source filtering information

10  coming out of the source bank, and everything in

11  between there except for the destination bank is how

12  you get that source filtering information.

13         And then the last element is the means for      11:50:07

14  filtering, which is the source protect table 110, and

15  then some buffered routing logic, which isn't shown

16  but does happen to be shown in Figure 2.

17         And then when you look at Claim 12 then,          11:50:20

18  you've got, again, your destination address and your

19  information associated with destination address and it

20  kind of overlaps with the means for looking up stuff.

21  The patent describes it, that it serves a double duty.

22         But again, you need everything in between         11:50:40

23  there to get from the destination address to the

24  information associated with the destination address.

25         And then if you go to the next slide.            11:50:46

1    Figure 5 is described in column 22 as providing

2    additional details.  And again, you have, you know,

3    without belaboring the point here, the same three --

4    well, we've got the same three elements of Claim 8

5    that correspond as shown in our brief in here in

6    Figure 5.

7              Just go through the next slide.  There's    11:51:12

8    your means for looking up and then your means for

9    filtering.

10             Then next slide.  Your means for looking up    11:51:22

11   using the destination address is what's shown in red.

12             And so the real issue here, when we refer to    11:51:29

13   Figures 3 and 5, is whether you must, when you're

14   construing a means plus function claim, consider all

15   the different embodiments.  And the answer clearly is

16   yes.

17             Next slide.  There's a bunch of cases    11:51:45

18   without referring the Court to this one which explains

19   in the highlighted portion that the identification of

20   corresponding structure may embrace more than the

21   preferred embodiment.  A means plus function claim

22   encompasses all structure in the specification

23   corresponding to that element and equivalent

24   structures.

25             So in this particular case it was -- the    11:52:03

1    claim construction was remanded to the Court because

2    the Court had not considered the alternative

3    embodiments to suggest that it is entirely proper when

4    considering these means plus function elements not

5    only to look at Figure 2 but to look at the other

6    figures as well that correspond to those functions.

7                    THE COURT:  Okay.  Let me ask you a          11:52:26

8    question about the means for receiving.

9                    MR. YOCHES:  Okay.                            11:52:32

10                   THE COURT:  I guess, you know, we have        11:52:41

11   here, you've suggested in Figure 2, you say MACs 34,

12   38, 40, 42 and 44, and I guess my question is, if you

13   look at column 13, line -- go about 1 through 10, it's

14   talking about that the MAC level switch, 38, examines

15   the source node address field to determine, et cetera.

16   Then it says, MAC 34 in Figure 2 may transmit data and

17   clock information on lines 38 to switch 38, which

18   determines which of the destination MACs, 40, 42, 44,

19   are to receive the information in switch 38, then it

20   goes on.

21                   So why is 38, which encompasses, I guess, in  11:53:50

22   Figure 2 all that's encompassed by these dotted lines

23   here, why is that a MAC and not a switch?

24                   MR. YOCHES:  It's a MAC switch is what       11:54:01

25   it's called.  It's called the MAC switch.

108

```
 1                    THE COURT:  But why is it the same as        11:54:05

 2   34, 40, 42, 44 and 46?

 3                    MR. YOCHES:  It's not.  I'm sorry, it's      11:54:10

 4   definitely not.

 5                    THE COURT:  Let me stop you there.  So       11:54:13

 6   these MACs, the MAC 34, obviously it's receiving data

 7   packets, right?

 8                    MR. YOCHES:  That's correct.                 11:54:23

 9                    THE COURT:  Okay.  And it's shown in         11:54:26

10   Figure 4 up at the top here.  Then it kind of

11   describes, in what I read in 38, is examining this,

12   characterizes it as a switch, it says it's a MAC level

13   switch.  And then it goes on to determine switch.  And

14   then it sends the information down to these MACs down

15   at the bottom.

16        So what is a MAC switch?                                11:54:48

17                    MR. YOCHES:  The MAC switch is what you      11:54:52

18   need, and the specification describes this.  Because

19   you've got a bunch of different networks here that

20   these are communicated.  Let me give you an example.

21             You've got a network here in the court, I          11:55:05

22   assume, that allows -- and one way to know what that

23   network is is you've got an e-mail address that

24   probably ends with something that refers to the

25   Eastern District of Texas.  And I've got a network at
```

```
 1  my office that is an internal network that we use for

 2  the office.  And the question is how do we talk to

 3  each other.

 4            And the way you talk to each other is you          11:55:25

 5  need these switches or routers that connect all of our

 6  networks.  And they receive packets.  So if I were to

 7  send you an e-mail, I would send you a packet, it

 8  would be received by a number of switches, but in

 9  particular, here's an example of one, it would then

10  analyze that message and determine which one of my

11  ports to send it out to, which networks to forward it

12  on to.

13            So you need the switches in order to connect        11:55:53

14  the networks.  And the elements that are on each

15  network have these MACs.  So the MACs don't -- those

16  MACs don't connect the networks, they are part of a

17  device.  The switches is what connects the networks.

18            And so when you look at Claim 8, it's               11:56:21

19  talking about a controller for connecting networks,

20  that's why we think it's limited in this figure switch

21  38, because that's what's connecting the networks, the

22  switch, the MACs aren't doing it.

23            THE COURT:  Okay.  Let me ask.  You                 11:56:35

24  mentioned in your proposals, Figures 4 and 5.  Now, I

25  guess my concern is the relationship of those figures
```

1  to what's actually the claim language, the means plus

2  function term that's being addressed here.

3          I mean, what do you characterize Figure 4 as   11:57:03

4  going to?  What does it -- what does it add?  Does it

5  go to the exact same function that you're talking

6  about here?

7          MR. YOCHES:  Figure 4 is described as   11:57:18

8  more generic.

9          If you take to look at slide 5, there's   11:57:22

10  Figure 4.  Figure 4 is more -- it's more of a very

11  high-level discussion of what's happening.

12          So remember we had -- back in Figure 2 you   11:57:40

13  had the address stored in those shift registers?

14  Well, that is pretty much being shown by these things,

15  destination address and source address, which are like

16  shown as 128 and 126.  So that's the source address

17  and destination address.

18          And then 130, for example, is the compressed   11:58:11

19  address directory.  Really, if you will, Figure 4, I

20  don't think, shows the means for receiving.  But the

21  compressed address directory is kind of a very

22  high-level diagram of something that performs the

23  function of looking up.  So the addresses come in

24  after they're processed.

25          And the reason we didn't include all this   11:58:33

1    stuff, 120, 132, 134 and 136 is it's very unclear

2    whether that's structure or whether that's actual

3    data, so we didn't stick that in.

4            But the directory there, 130, is --    11:58:45

5    corresponds to the stuff, if you will, in pink on our

6    figures.  It corresponds to the table.  And then

7    you've got these linked list records which correspond

8    to the destination information and corresponds to the

9    source filtering information.

10           And I would be perfectly happy, if we wanted    11:59:13

11   to take this out, it may be confusing, because it's

12   not a complete story.  So I don't mind taking that

13   Figure 4 out of the corresponding structure.  Perhaps

14   we were a little bit too aggressive in including it,

15   but it's not really key to this.

16                   THE COURT:  Okay.  What about Figure 5?    11:59:30

17                   MR. YOCHES:  Figure 5 is definitely    11:59:32

18   related.  If you take a look at column 22, it says

19   referring out of Figure 5, this figure essentially

20   illustrates the associative memory Figure 3, so it's

21   additional details tied to Figure 3.

22                   THE COURT:  Okay.  Is that everything    11:59:47

23   on means?

24                   MR. YOCHES:  Yes, Your Honor.    11:59:51

25                   THE COURT:  Let me ask you one question    11:59:52

```
 1    about MAC address.  I want to go back to that term for

 2    just a second.

 3              I want you just to respond to Fenner sites,        11:59:58

 4    column 14, I believe, lines 15 to 22.

 5                   MR. YOCHES:  Okay.                             12:00:28

 6                   THE COURT:  And it talks about the            12:00:29

 7    address length descriptions.  And what it's talking

 8    about is in the context of --

 9                   MR. YOCHES:  I'm sorry, let me get the        12:00:38

10    right patent.

11                   THE COURT:  '906, go back to '906,            12:00:40

12    column 14, line 15 really through about 19.

13                   MR. YOCHES:  Okay.                            12:00:47

14                   THE COURT:  It says:  The examples            12:00:48

15    presented in Figures 2 and 3 use six octets as the

16    maximum address length since this is the length of the

17    IEEE standard physical layer, and then that says

18    that's the (MAC level) address used by Ethernet, Token

19    Ring and FDDI.

20              Now, that's what they're drawing from for a        12:01:09

21    MAC address.  So what's your response specifically to

22    that?

23                   MR. YOCHES:  Well, the response to that       12:01:16

24    is, if you read everything here that we're talking

25    about logical addresses, because this is talking about
```

1    the addresses for the source and destination.  And,

2    you know, it starts here on the bottom of column 13,

3    line 60, as referring to Figure 2, which I don't think

4    there's any question is talking about looking up

5    source filtering information based upon logical

6    addresses.

7              And so now you get to column 14.  And you      12:01:43

8    say, well, why is this all of a sudden talking about

9    MACs?  And if you now read it in context of that,

10   essentially they're saying the logical address is

11   arbitrary.  It just has to be unique.  And you might

12   as well make it 48 bits because that's how long the

13   IEEE standard is for the MAC level address, or you can

14   use the Ethernet or Token Ring or FDDI.

15             It then says that this IP.ISO field is        12:02:13

16   variable link, in other words, you've got a lot of

17   flexibility what you can go.  You can go up to 20

18   octet, an octet being, I believe, eight bits.  But

19   it's suggesting you only using six because that's the

20   length of a MAC and there's a number that you have

21   already.

22             So it's not saying it's a physical address,   12:02:36

23   it's just saying, listen, it's arbitrary, why don't

24   you choose that since you've already got a way of

25   assigning those numbers.

```
 1                  THE COURT:  Okay.  All right.  Well, I        12:02:46
 2   guess that completes argument on the means plus
 3   function terms?  Is there anything else to address?
 4                  MS. QUINN:  Your Honor, I just wanted         12:02:56
 5   to address briefly a couple points that defendants
 6   made.
 7                  THE COURT:  All right.                        12:03:02
 8                  MS. QUINN:  This is a media access            12:03:07
 9   controller address.  It's a physical thing.  We've
10   shown it, it supports the switch.  There's no way that
11   the MAC address is a logical address.  The claims
12   would make no sense.
13          What is this means for receiving?  It               12:03:23
14   doesn't say means for storing or means for computing,
15   it says means for receiving.  And anyone that has a
16   computer knows what's the means for receiving
17   electricity to your computer, it's not the battery
18   that's storing the charge, it's what you're connecting
19   it to, a plug, a connector.  That's what the MACs do,
20   they connect to the networks out there.
21          Their contention that MACs don't connect to         12:03:49
22   the network, that actually goes against the
23   specification.  The MACs are described and we've shown
24   portions, column 13, lines 10 through 15 says:  The
25   media access controller, MAC, is a defined entity in
```

1   each of the above listed LAN standards which connects

2   the computer side logical level interface physical

3   media.  So the circuitry and the computer side of the

4   MAC only deals with the header information bits.  It's

5   the actually thing that connects all the computers

6   together.  And that's on the '906 patent.

7            And that's all we have, Your Honor.                    12:04:30

8                 THE COURT:  All right.  Okay.  So are           12:04:32

9   we done?

10                MR. GOVETT:  Yes, Your Honor.                   12:04:37

11                MR. YOCHES:  I believe so, Your Honor.          12:04:39

12                THE COURT:  All right.  Well, I know we         12:04:40

13  had a few other terms I think were at issue, but we'll

14  take those on the briefs, I guess.  Is that what I'm

15  hearing?

16                MS. QUINN:  Which terms, Your Honor?            12:04:51

17                THE COURT:  Well, I guess I had down            12:04:52

18  for the '906 patent each communication stored

19  associated with the MAC address, stored association.

20                MS. QUINN:  Your Honor, those terms            12:04:59

21  were addressed in connection with the associated with

22  or association with terms.  The issues are the same on

23  all of those.

24                THE COURT:  All right.  Very good then.         12:05:07

25  Well, I appreciate your arguments and thank you for

1    getting them shortened up.

2              Let me just ask this, I assume that the case        12:05:13

3    has been mediated to this point?

4                      MR. CHIAVIELLO:  Yes, it has, Your        12:05:20

5    Honor.

6                      THE COURT:  As always, we're going to        12:05:21

7    work on the claim construction opinion and get it out

8    as soon as possible.  But once we do, I want you to

9    mediate for a second time.  And I would suggest -- who

10   is your mediator?

11                     MR. CHIAVIELLO:  Jim Knowles.        12:05:35

12                     THE COURT:  If y'all will get with him.        12:05:37

13   As always, he's very busy with mediations.  I know

14   y'all are all very busy, as your clients are as well.

15   So go ahead and get a date, mark it down, because I'm

16   going to expect you to mediate it if the case

17   continues on and make a good, strong effort to get it

18   resolved again at a formal mediation once the claim

19   construction opinion is issued.

20                     MR. CHIAVIELLO:  Your Honor, should we        12:06:00

21   assume the claim construction opinion within 30 days?

22                     THE COURT:  Never assume.  No, I can't.        12:06:03

23   As you may be aware, as y'all are very busy, we're

24   very busy.  We will get it out as soon as we can.

25   That's typically our goal, but I never promise

```
1   anything.  I don't know what's going to come up in the

2   meantime.  But we will get it out as soon as we can.

3            All right.  Anything further from the           12:06:23

4   plaintiff?

5                    MR. CHIAVIELLO:  Nothing, Your Honor.    12:06:25

6                    THE COURT:  Anything from the            12:06:27

7   defendants?

8                    MR. YOCHES:  Nothing, Your Honor.        12:06:29

9                    THE COURT:  Thank you very much for      12:06:30

10  your arguments and we are adjourned.

11                                                            12:06:33

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          I certify that the above and foregoing pages
   contain a true and correct transcript.

2

3

   _____          _____

4  KIMBERLY J. JULIAN                DATE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25